Edward Earl **FORTE**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 118–87.

Court of Criminal Appeals of Texas, En Banc.

Sept. 27, 1988.

Rehearing Denied Oct. 19, 1988.

Richard Alley (court appointed), Fort Worth, for appellant.

Tim Curry, Dist. Atty. and C. Chris Marshall, Asst. Dist. Atty., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

DUNCAN, Judge.

The appellant was convicted of driving while intoxicated. Granting his first petition for discretionary review in *Forte v. State*,[1] 707 S.W.2d 89 (Tex.Cr.App.1986), we reversed the judgment of the Fort Worth Court of Appeals and decided that under the Sixth Amendment to the United States Constitution the "[a]ppellant's right to counsel did not attach until the time the complaint was filed." *Id.*, at 92. Consequently, under the Sixth Amendment, the appellant was not entitled to consult with an attorney prior to taking the breath test.

Despite the appellant properly asserting a violation of his State constitutional and statutory rights the court of appeals "decided the case only on federal constitutional grounds...." *Id.* Therefore, the case was remanded to the court of appeals to resolve the issues predicated on State constitutional and statutory grounds. Following the remand, the court of appeals affirmed the appellant's conviction. *Forte v. State*, 722 S.W.2d 219 (Tex.App.—Fort Worth, 1986, pet. granted). In doing so the court of appeals rejected appellant's State claims, writing *inter alia:*

> [A]n exhaustive search of the record has been conducted to determine whether appellant was denied some privilege to which he has been held to be entitled under some provision of either the Texas or United States Constitution, the implementation of which might require the consultation with legal counsel before the execution of some option to exercise or waive such right or privilege. We find no evidence admitted in this cause (whether proper objection be laid or not) which was obtained in violation of any known constitutional provision or safeguard.

*Id.*, at 221.

This Court granted the appellant's second petition for discretionary review to decide whether the court of appeals' conclusion relative to the State law oriented issues was correct.

In summary, the sole issue presented in this case is whether a person arrested for driving while intoxicated, prior to deciding whether to submit to a chemical sobriety test, in particular the breathalyzer, has a constitutional right to counsel under Art. I,

---

1. The facts of this case are adequately set forth in both the court of appeals' decision, *Forte v. State*, 686 S.W.2d 744 (Tex.App.—Fort Worth, 1985) (Opinion on Rehearing) and this Court's previous opinion, *Forte v. State, supra;* therefore, they will not be repeated.

Sec. 10, of the Texas Constitution. Submission to a breath test is required pursuant to the Texas Implied Consent Statute, Article 6701L-5, Sec. 1, V.A.C.S.[2]

In order to clarify the issue one should observe that Art. I, Sec. 10, *Tex. Const.*, encompasses numerous safeguards which are relevant to the administration of the Texas criminal justice system. This stylistic compilation of several rights within one paragraph is somewhat contrary to the style of the Federal Constitution. Be that as it may, the only issue that we will resolve is the appellant's right to counsel under Art. I, Sec. 10, *Tex. Const.*[3]

This observation is particularly significant because of the confusion that exists between the express constitutional right to counsel (Sixth Amendment and Art. I, Sec. 10, *Tex. Const.*) and the implicit right to consult with an attorney under the Fifth Amendment of the United States Constitution, as interpreted by the Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■ Similar to the Federal Constitution, the right against compulsory self-incrimination and the right to counsel are separate and distinct under the Texas Constitution, although at times they seem to be intertwined. As noted, this has lead to much confusion among the bench and bar. This confusion is at its apogee in the application of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966), and its state and federal progeny.

In *Miranda v. Arizona, id.*, the Supreme Court announced that certain procedural safeguards were necessary in order to secure the privilege against self-incrimination, when a criminal suspect was subjected to custodial interrogation. Thus, in such a setting and prior to any questioning by a law enforcement officer, a suspect must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. In addition, once the person being interrogated indicates he desires to consult with an attorney, there can be no further questioning. The Court concluded that these warnings were necessary as a prophylactic device to protect the privilege against compulsory self-incrimination, and thus emanated from the Fifth Amendment out of "concern for

---

2. The Texas Implied Consent Statute, Article 6701*l*-5, Section 1, V.A.C.S., reads as follows:

> Any person who operates a motor vehicle upon the public highways or upon a public beach in this state shall be deemed to have given consent, subject to the provisions of this Act, to submit to the taking of one or more specimens of his breath or blood for the purpose of analysis to determine the alcohol concentration or the presence in his body of a controlled substance or drug if arrested for any offense arising out of acts alleged to have been committed while a person was driving or in actual physical control of a motor vehicle while intoxicated. Any person so arrested may consent to the giving of any other type of specimen to determine his alcohol concentration, but he shall not be deemed, solely on the basis of his operation of a motor vehicle upon the public highways or upon a public beach in this state, to have given consent to give any type of specimen other that a specimen of his breath or blood. The specimen, or specimens, shall be taken at the request of a peace officer having reasonable grounds to believe the person to have been driving or in actual physical control of a motor vehicle upon the public highways or a public beach in this state while intoxicated.

3. Art. I, Sec. 10, of the Texas Constitution states as follows:

> Sec. 10. In all criminal prosecutions the accused shall have a speedy public trial by an impartial jury. He shall have the right to demand the nature and cause of the accusation against him, and to have a copy thereof. He shall not be compelled to give evidence against himself, *and shall have the right of being heard by himself or counsel, or both,* shall be confronted by the witnesses against him and shall have compulsory process for obtaining witnesses in his favor, except that when the witness resides out of the State and the offense charged is a violation of any of the anti-trust laws of this State, the defendant and the State shall have the right to produce and have the evidence admitted by deposition, under such rules and laws as the Legislature may hereafter provide; and no person shall be held to answer for a criminal offense unless on an indictment of a grand jury, except in cases in which the punishment is by fine or imprisonment, otherwise than in the penitentiary, in cases of impeachment, and in cases arising in the army or navy, or in the militia, when *in actual service in time of war or* public danger. [Emphasis added.]

adequate safeguards to protect precious Fifth Amendment right...." *Miranda, id.,* at 457, 86 S.Ct. at 1618, 16 L.Ed.2d at 713.[4] The Sixth Amendment right to counsel was not considered by the Supreme Court when it decided *Miranda.*

Both the Supreme Court and this Court have already determined that Fifth Amendment principles do not govern the admissibility of evidence obtained from the breathalyzer. *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *Rodriquez v. State,* 631 S.W.2d 515 (Tex. Cr.App.1982); *Olsen v. State,* 484 S.W.2d 756 (Tex.Cr.App.1969). However, contrary to the beliefs of many courts of appeals throughout this State, this Court has never determined when the right to counsel attaches exclusively under the right to counsel provision of Art. I, Sec. 10, of the Texas Constitution.[5]

▉ As previously observed, on original submission this Court rejected appellant's Sixth Amendment claim concluding that the right to counsel attaches only at or after the initiation of adversary judicial proceedings against the defendant. Thus, under the Federal Constitution the appellant had no right to consult with counsel prior to deciding whether or not he should take the breathalyzer. In reaching this conclusion Judge Campbell wrote:

> In 1984, the Supreme Court revisited its decisions regarding when the Sixth Amendment right to counsel attaches and concluded that 'our cases have long recognized that the right to counsel attaches only *at or after* the initiation of adversary judicial proceedings against the defendant.' *United States v. Gouveia,* 467 U.S. at [180], at 187, 104 S.Ct., [2292], at 2297 [81 L.Ed.2d 146] (placement of prisoner in administrative segregation prior to initiation of adversary judicial proceedings does not entitle him to appointment of counsel). That conclu-

sion essentially gave majority approval to an earlier plurality opinion of the court in *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). See *United States v. Gouveia,* 467 U.S., at 187, 104 S.Ct., at 2297–98 (approving language from *Kirby v. Illinois* [406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411]). In *Kirby v. Illinois, supra,* the Supreme Court concluded that the Sixth Amendment right to counsel attaches only upon or after formal initiation of judicial proceedings. [Footnote omitted]

Appellant argues that earlier Supreme Court decisions suggest that a stage may be characterized as critical prior to the formal initiation of judicial proceedings, thus triggering the right to counsel under the Sixth Amendment. See *United States v. Gouveia,* 467 U.S., at 192, 104 S.Ct., at 2300 (Stevens, J., and Brennan, J., concurring) (prior cases do 'not foreclose the possibility that the right to counsel might under some circumstances attach prior to the formal initiation of judicial proceedings....'). Specifically, appellant argues that *United States v. Gouveia,* supra, does not foreclose such a possibility in the instant case. We disagree.

The Supreme Court has only deviated from the bright line rule established for attachment of the Sixth Amendment right to counsel in two prior cases: *Miranda v. Arizona, supra,* and *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). *United States v. Gouveia,* 467 U.S., at 188, n. 5, 104 S.Ct., at 2298, n. 5. However, the constitutional foundation for the decisions in both *Miranda* and *Escobedo* has since been limited to the Fifth Amendment. *Id.; Moran v. Burbine,* [475] U.S. [412], at [425–426] 106 S.Ct. [1135], at [1145–1146]. Thus, in no case has the Supreme Court extended the Sixth Amendment right to counsel to a scenario that oc-

---

**4.** See, Note, *The Pretrial Right to Counsel,* 26 Stanford Law Review 399 (Jan. 1974).

**5.** These courts of appeals have assumed that the holdings of this Court in regard to the right to counsel under Texas law is no more expansive than the right to counsel afforded by the Sixth

and Fourteenth Amendments to the United States Constitution. See *Yates v. State,* 679 S.W. 2d 534 (Tex.App.—Tyler 1984); *Martinez v. State,* 712 S.W.2d 242 (Tex.App.—San Antonio 1986).

curred prior to initiation of adversary judicial proceedings. Compare, e.g., *United States v. Wade,* [388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149] *supra* (Sixth Amendment right to counsel attaches at post-indictment lineup) with *Kirby v. Illinois, supra* (Sixth Amendment right to counsel does not attach at pre-indictment lineup).

Furthermore, the Supreme Court recently rejected the notion that a 'critical stage' can occur prior to initiation of judicial proceedings and crystallized its position as to when the Sixth Amendment right to counsel attaches:

> As *Gouveia* made clear, until such time as the ' "government has committed itself to prosecute, and ... the adverse positions of government and defendant have solidified" ' the Sixth Amendment right to counsel does not attach. *United States v. Gouveia,* supra, at 189 [104 S.Ct., at 2298] (quoting *Kirby v. Illinois,* 406 U.S., at 689 [92 S.Ct., at 1882]).

*Moran v. Burbine,* [475] U.S., at [432], 106 S.Ct., at [1147] (interrogation prior to indictment does not raise Sixth Amendment right to counsel, regardless of 'critical' nature of the pretrial event). See also *Michigan v. Jackson,* [475] U.S. [625], [632], 106 S.Ct. 1404, 1409, 89 L.Ed.2d [631], n. 5 (1986) (Sixth Amendment provides right to counsel at a 'critical stage' *after initiation of adversary judicial proceedings*); *Dunn v. State,* 696 S.W.2d 561, 565 (1985) cert. denied. [475] U.S. [1089], 106 S.Ct. 1478, 89 L.Ed. 2d 732 (1986) ('mere arrest and subsequent questioning' does not trigger Sixth Amendment right to counsel). These holdings make it clear that our determination whether appellant's Sixth Amendment right to counsel was denied in the instant case depends upon when formal adversary proceedings were initiated.

*Forte, id.,* at 91–92.

The most prevalent difficulty in interpreting the Sixth Amendment right to counsel is determining when the right is activated. Although the Supreme Court seems to have reached a consensus on that matter, as the above quotation indicates, the road the Court traveled to get to that point was rocky indeed.

In *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932)[6] the Court, after analyzing the historical basis of the right to counsel,[7] concluded that under the Fourteenth Amendment a defendant subjected to the death penalty was entitled to appointed counsel. The Court observed that because "[e]ven the intelligent and educated layman has small and sometimes no skill in the science of law," *id.,* at 69, 53 S.Ct. at 64, without "the guiding hand of counsel at every step in the proceedings against him," *id.,* although one "be not guilty, he faces the danger of conviction because he does not know how to establish his innocence." *Id.* Therefore, the appointment of effective counsel is necessary to comport with the idea of due process as set forth in the Fourteenth Amendment.

In *Powell v. Alabama, supra,* the Court also observed that although some local attorneys were appointed to represent the defendants during their trial on the day of their trial, the defendants did not have the assistance of counsel "during perhaps the most *critical period*[8] of the proceedings

---

**6.** In *Powell, supra,* the Court was reviewing the prosecution of nine Black youths who had been charged with the rape of two White girls near Scottsboro, Alabama. The case became a *cause celebre* in the fight against racial injustice. See: Carter, *Scottsboro: A Tragedy of the American South.*

**7.** Interestingly, the right to counsel at common law was rather convoluted. For example, one had the right to counsel if charged with a petty crime. However, there was no right to counsel for persons charged with the more serious offenses. The theory behind such a perverse rule of law, which was rejected by the colonies, was that in felonies the Court was counsel for the prisoner.

**8.** The terminology "critical period," as utilized in *Powell v. Alabama, supra,* through an evolutionary process became "critical stage." Thus, "[t]he Sixth Amendment right ... to counsel applies only to 'critical stages' in the criminal prosecution." LaFave, *Criminal Procedure* § 11.2, p. 20. Since a trial is obviously a "critical stage," the principle issue that must be analyzed and resolved is, as *Powell v. Alabama, supra,* so long ago noted, at what point prior to

against ... [them], that is to say, from the time of their arraignment until the beginning of their trial, when consultation, thorough investigation and preparation were vitally important. ..." *Id.*, at 57, 53 S.Ct. at 59. This observation that the right to counsel begins at the "critical period of the proceedings," *id.*, has generally prevailed as the time when one has a right to counsel.

We must therefore decide whether the situation presented is, under the Texas Constitution, a "critical stage" of the criminal prosecution, and if so, whether such a stage can occur prior to the initiation of the adversarial proceeding under the Texas Constitution.[9] The threshold question then is whether under Art. I, Sec. 10, the right to counsel can indeed attach at a stage in the proceeding prior to the filing of formal charges.

In defining the term "critical stage" the United States Supreme Court observed in *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967):

> ... It is central to that principle that in addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, *where counsel's absence might derogate from the accused's right to a fair trial.* The security of that right is as much the aim of the right to counsel as it is of the other guarantees of the Sixth Amendment— the right of the accused to a speedy and public trial by an impartial jury, his right to be confronted with the witnesses against him and to have compulsory pro-

cess for obtaining witnesses in his favor. *The presence of counsel at such critical confrontations, as at trial itself, operates to assure that the accused's interests will be protected consistently with our adversary theory of criminal prosecutions.*

> In sum, the principle of *Powell v. Alabama* and succeeding cases requires that we scrutinize any pretrial confrontation of the accused *to determine whether the presence of counsel is necessary to preserve the defendant's basic right to a fair trial as affected by his right to meaningfully cross-examine* the witnesses against him and to have effective assistance of counsel at the trial itself. *It calls upon us to analyze whether potential substantial prejudice to the defendant's rights inhere in the particular confrontation and the ability of counsel to help avoid that prejudice.* [Emphasis added; citations omitted.]

*Id.*, at 226–227, 87 S.Ct. at 1932.

The Court then concluded a post-indictment lineup was a "critical stage" and the right to counsel attached under the Sixth Amendment because:

> Since it appears that there is grave potential for prejudice, intentional or not, in the pretrial lineup, which may not be capable of reconstruction at trial, and since presence of counsel itself can often avert prejudice and assure a meaningful confrontation at trial, there can be little doubt that for Wade the post-indictment lineup was a critical stage of the prosecution at which he was 'as much entitled to such aid [of counsel] ... as at the trial

the trial does an accused have the right to the assistance of counsel.

**9.** The "critical stage" analysis utilized in determining whether, at a particular point in the criminal proceedings, presence of counsel is deemed mandated in order to protect and preserve the accused's right to a fair trial is a Federal Constitutional principle gleaned from a number of Supreme Court cases including, as previously noted, *Powell v. Alabama, supra*, and *United States v. Wade, supra.* We believe that such analysis is an essential tool and the correct

starting point in making the appropriate determination even under the Texas Constitution. In resolving such issue we realize that federal constitutional safeguards only establish a minimum standard for State courts, and that this Court is not otherwise limited in its interpretation. In arriving at the correct construction of Art. I, Sec. 10, *Tex. Const.*, we will "ultimately follow our own lights." *Olson v. State*, 484 S.W.2d 756, 762 (Tex.Cr.App.1969). See also: Duncan, "Terminating the Guardianship: A New Role for State Courts," *19 St. Mary's L.J.* 809 (1988).

itself.' [Citations omitted.] [10]
*Id.*

For reasons that seem to beg the question, in *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), the Supreme Court rejected the notion that the Sixth Amendment right to counsel attached at a pre-indictment lineup. The Court held that such right does not attach until the initiation of judicial proceedings. The rationale for the holding was that the initiation of the charges was the starting point of the adversary criminal system, thus committing the government to prosecute the defendant, whereby the defendant at that time is faced with the intricacies of the substantive and procedural criminal law. The plurality opinion of *Kirby, supra,* was implicitly made a majority in a number of cases which are cited by Judge Campbell in *Forte v. State, supra.*

We believe that the basis and rationale of the *Wade–Gilbert* rule and the *Kirby* line of cases become difficult if not impossible to reconcile, especially when one considers the realities of the criminal investigatory procedures utilized by most law enforcement agencies. That is, the same dangers of prejudice which *Wade* and *Gilbert* claimed concern will invariably exist at many stages of a criminal prosecution prior to the onset of formal charges; therefore, the demarcation of formal charges before the right to counsel is triggered is probably arbitrary and capricious.

As previously noted however, essential to the "critical stage" analysis is that the "right to counsel" must have a point of inception. In other words, the right must have a beginning point. In *Miranda v. Arizona, supra,* and under the Fifth Amendment that beginning point was a suspect being taken into custody. In the case of the right to counsel the point at which one is entitled to consult with an attorney must be accorded some identifiable, describable and established point.

Research concerning the history of the 1876 Texas Constitution reveals that in 1875, just prior to the adoption of our Constitution, Texans throughout the State were feeling the ill effects of a Radical Republican Reconstruction which they considered to be extremely repressive, and those who contributed to the drafting of the Texas Bill of Rights were intent on providing the citizens of Texas with a strong prophylactic document that protected them from governmental tyranny.[11]

---

**10.** See also *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), which was the companion case to *United States v. Wade, supra,* and decided on the same day. Together, these holdings became commonly known as the *Wade–Gilbert* rule.

**11.** The Radical Republican regime in Texas was one of oppression, corruption, graft and blackmail. It sought to centralize the government and brought about a large growth in government expenditures, an increase in taxation, and a rapid accumulation of a comparatively heavy debt.

    *    *    *    *    *    *

In various areas of the state, lawlessness was rampant, so the reconstruction government established a militia which was to be called out in the event of general resistance to the laws. For the apprehension of individual offenders or of those acting in small bodies, a state police system was established. Both the militia and the police were under the control of the governor whose power was reinforced by a provision enabling him to establish martial law in any troublesome district. The governor's police force might have been a good thing, except that some of the worst desperados in the state were accepted by the force.

Under its shield of authority they committed many high-handed outrages: barefaced robbery, arbitrary assessments upon helpless communities, unauthorized arrests, and at times even murders. The police force was used so often to enforce the arbitrary will of the governor that it became an emblem of despotic authority. The governor so shaped the laws and the administration that his power over the people of Texas was truly military as that which had been wielded by the military commanders. In actual fact the liberty and life of every citizen lay in the governor's hands.

The mere existence of the carpetbag government within the state's borders seemed insulting and shameful to many Texans, but the crudities of the carpetbag government, its greed and dishonesty made the affront even harder to bear. When the voices of moderation finally prevailed, and Texas was given the opportunity to oust the carpetbag regime, the delegates to the Constitutional Convention of 1875 determined to include in the state's basic instrument as many safeguards as possible to prevent the recurrence of such wide spread and flagrant abuse of power. [Footnotes omitted.]

In drafting this document, the authors of the 1876 constitution did not rely solely on the Bill of Rights included in the Federal Constitution as their guiding light in creating the Texas Bill of Rights. Rather, the Framers paid heed to the old Texas Constitution of 1845, as well as consulting other State constitutions such as Pennsylvania and Louisiana. See Interpretive Commentary following Preamble to the Texas Constitution of 1876; 1 Vernon's Texas Constitution 198 (Vernon 1955) (Interpretive Commentary).[12]

The attitude of those who attended the 1875 Constitutional Convention concerning one's right to counsel seems to be reflected in an early case which discussed the right to counsel under Art. I, Sec. 10 of the Texas Constitution. In *Hamilton v. State,* 153 S.W. 331 (Tex.Cr.App.1913), this Court, while also discussing the relevant penal code sections then in effect, noted:

> It is not necessary that the party desiring counsel should be preparing a defense against some accusation after indictment found or after arrest. The *statute* is broader and fully comprehends every possible situation in which an accused person or person under arrest or not under arrest desires to consult with counsel, or obtain advice or services of counsel in the protection of his rights, or even supposed legal rights. [Emphasis added]

*Id.,* at 336.

At first glance it would seem that the Court was merely seeking to interpret the Texas statute in effect at the time. However, after finding that the local sheriff denied the accused in *Hamilton,* his right to counsel, the Court specifically noted "[t]here has been a clear and palpable violation of article 1046, P.C. and a *clear and palpable violation of the Constitution and the Bill of Rights* [emphasis added]."[13] Close scrutiny of the case reveals, however, that the Court was actually concerned with the right against self-incrimination rather than the right to counsel.

The reasoning of *Hamilton, supra,* if anything, is akin to the approach taken by the Supreme Court in *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758 (1964), which in itself is an aberration. In fact, in *Moran v. Burbine, supra,* the Supreme Court made it clear that although *Escobedo* was decided as a Sixth Amendment case, in retrospect, it is now to be perceived like *Miranda,* as a vindication of the privilege against self-incrimination. This Court also having made a distinct separation between the privilege against self-incrimination and the right to counsel finds that if *Hamilton, supra,* is to be understood for the proposition that an individual has the right to counsel under Art. I, Sec. 10, anytime he is arrested and desires to consult with counsel then in that event it paints with too broad a brush, and therefore is not dispositive of the issue now before us.

Other cases of this Court which have endeavored to interpret the right to counsel provision of Art. I, Sec. 10, have shed less light on the subject now before us. For instance in *Jackson v. State,* 115 S.W. 262

---

Thomas, 35 *The Texas Constitution of 1876,* Texas L.Rev. 907, 912–913 (1957).
    For an excellent overview of early Texas Constitutional history see Judge Clinton's dissenting opinion in *Eisenhauer v. State,* 754 S.W.2d 159, 166–176 (Tex.Cr.App.1988).

12. In addition, the Constitutional Convention of 1875 drew upon the State constitutions of Tennessee (1870), West Virginia (1872), Arkansas (1874), Alabama (1875), and Missouri (1875), to augment the Texas Bill of Rights as enunciated in the 1845 Constitution. Ericson, *Origins of the Texas Bill of Rights,* Vol. LXII The Southwestern Historical Quarterly 457, (1959); See also Comment, *Individual Rights and State Constitutional Interpretations: Putting First Things First,* 37 Baylor L.Rev. 493 at 497 (Spring 1985).

13. Article 1046 of the Texas Penal Code then read as follows:
    *Refusal to allow consultation with counsel.* If any officer or other person having the custody of a prisoner in this state shall wilfully prevent such prisoner from consulting or communicating with counsel, or from obtaining the advice or services of counsel in the protection or prosecution of his legal rights, he shall be punished by imprisonment in the county jail not less than sixty days nor more than six months, and by fine not exceeding one thousand dollars. [Act Nov. 15, 1864 p. 15] *The Penal Code of the State of Texas* (1911).

(Tex.Cr.App.1908), the accused's counsel was unbelievably excluded from the courtroom during the trial on the merits when the prosecution invoked the rule. Thus, the accused was denied his right to be represented by counsel at trial. Naturally, this would now violate both the dictates of the State and Federal constitutions. *Turner v. State*, 241 S.W. 162 (Tex.Cr.App.1922), involved a situation where a local peace officer interfered with counsel consulting with his client in preparation for trial, and in fact counsel was not able to see his client until one day prior to trial. Such a case scenario is distinguishable as the accused was denied his right to effective representation at trial. It is therefore apparent that no decisions of this Court are stare decisis of the issue to be resolved. Actually, there are no cases that even suggest a resolution of the issue. Cases from other jurisdictions, however, are helpful.

There is a sharp division between the jurisdictions which have already examined the question presently confronting the Court. A sampling from various jurisdictions indicates that a substantial number have held that there is no right to counsel based upon the *Kirby v. Illinois, supra,* rationale, and that under both the Federal and their respective State constitutions the right to counsel at a "critical stage" is not applicable until initiation of adversary criminal proceedings. It should be noted, however, that many of these cases arose during a driver's license revocation proceeding and some courts were able to avoid confronting the issue by simply stating such a matter was civil in nature even though they arose out of a criminal case. See *State v. Petkus*, 269 A.2d 123 (New Hampshire 1970); *McNulty v. Curry*, 42 Ohio St.2d 341, 328 N.E.2d 798 (1975); *Seders v. Powell*, 298 N.C. 453, 259 S.E.2d 544 (1979); *Graham v. State*, 633 P.2d 211 (Alaska 1981); *State v. Jones*, 457 A.2d 1116 (Maine 1983); *State v. Bristor*, 236 Kan. 313, 691 P.2d 1 (1984).

To the contrary, a growing number of other States have begun to recognize at least a limited State constitutional right to counsel prior to a suspect making a deci-

sion to submit to the breathalyzer. In *State v. Welch*, 135 Vt. 316, 376 A.2d 351 (1977), the Vermont Supreme Court totally by-passed the problem of *Kirby* by stating, "*Kirby* still adheres to the established position that it is necessary in all cases to scrutinize any pretrial confrontation to ensure the fairness of the procedures in light of the accused's rights to due process of law." *Id.*, 376 A.2d at 354. The Court then went on to hold that the situation presented was a "critical stage" under due process of law provisions. This holding was limited to the factual context of the case where the defendant had requested an attorney.[14]

The Washington Supreme Court in *State v. Fritzsimmons*, 93 Wash.2d 436, 610 P.2d 893 (1980), simply found that under their implied consent statute when a defendant was cited for driving under the influence, criminal proceedings were initiated and the right to counsel attached. However, such is not the case under the Texas statute (6701*l*–5, V.A.C.S.).

█ Based on reasoning similar to that expressed in *State v. Welch, supra,* the Maryland Court of Appeals in *Sites v. State*, 300 Md. 702, 481 A.2d 192 (1984), specifically rejected the notion that there was a right to counsel requirement pursuant to the right to counsel provisions of the Federal and its State Constitution. However, they observed that the due process of law provisions of the respective constitutions constituted a source of a right to counsel independent of the Sixth Amendment which was necessary to protect the fairness of the proceeding. We do not find such reasoning persuasive.

Very recently, the Oregon Supreme Court joined this growing number of other states and concluded that a DWI suspect has a limited right to counsel prior to making a decision relative to a breath test. In *State v. Spencer*, 750 P.2d 147, 305 Or. 59 (1988), the Oregon Supreme Court phrased the issue as follows: "This driving under the influence of intoxicants (DUII) case once again presents this court with the

---

14. See *State v. Welch*, 136 Vt. 442, 394 A.2d 1115 (1978).

question of what consequences follow if evidence of an intoxilyzer result is obtained from an arrested DUII suspect after police have refused to allow the suspect to contact an attorney." *Id.*, at 147. The court concluded that under Art. I, § 11 of the Oregon Constitution (right to counsel provision) "an arrested driver has the right upon request to a reasonable opportunity to obtain legal advice before deciding whether to submit to a breath test." *Id.*, at 156.

In reaching its conclusion the court recognized that a resolution of the issue had evolved through a trilogy of cases. The first case, *State v. Scharf*, 288 Or. 451, 621, 605 P.2d 690 (1980), held that from the language of the Oregon implied consent statute [15] it could be discerned that there was a legislative intent that the accused be afforded an opportunity to make a "voluntary and informed choice" whether to submit to the breathalyzer, and in order to have such a choice a driver must rely on the advice of counsel. This conclusion was reached because the court's majority believed that the Oregon legislature prescribed that the breath test could be administered only upon the suspect's voluntary consent, subject to the sanction of a driver's license suspension. However, this concept was later rejected in *State v. Newton*, 291 Or. 788, 636 P.2d 393 (1981), where the Oregon Court re-examined the issue and concluded that the implied consent statute by its very nature implied a driver's consent to submit to the chemical sobriety test, thereby eradicating the driver's right to lawfully refuse. The Court then recognized that although a suspect could indeed "physically refuse" to take the breath tests he could not do so legally, as legal consent was implied. In this plurality opinion the Court rejected the defendant's State and Federal claims to the right of counsel because he had not yet been charged with a criminal offense thus adopting the reasoning of the Supreme Court in *Kirby v. Illinois, supra.*

Despite the plurality's conclusion that there was no Sixth Amendment right to counsel it instead concluded that "an arres-

tee's right to call an attorney is a liberty interest protected by the Fourteenth Amendment . . . ," *State v. Newton, supra,* and that the arrestee should have been allowed to contact an attorney. Nevertheless, the Court decided that suppression of the breath test results would be inappropriate.

The final chapter in this dilemma was written in *State v. Spencer, supra,* where the Court repudiated the seminal holding of *Kirby v. Illinois,* stating:

A person taken into formal custody by the police on a potentially criminal charge is confronted with the full legal power of the state, regardless of whether a formal charge has been filed. Where such custody is complete neither the lack of a selected charge nor the possibility that the police will think better of the entire matter changes the fact the the arrested person is at the moment, ensnared in a 'criminal prosecution.' The evanescent nature of the evidence the police seek to obtain may justify substantially limiting the time in which the person may exercise his or her Article I, section 11, right but it does not justify doing away with it.

*State v. Spencer, supra,* 750 P.2d at 155–156.

While we agree with our brethren from Oregon that the right to counsel during the investigative stage of a criminal prosecution may at times be just as important as the right to counsel at trial or at a post-indictment lineup, and today join them in rejecting the fiction of *Kirby v. Illinois, supra,* we do not agree it should be replaced with another one. That being, that the right to counsel automatically attaches under Art. I, Sec. 10, *Tex. Const.,* upon the suspects formal arrest. It is not the point of arrest which triggers the Art. I, Sec. 10, right to counsel but rather whether an individual is confronted with the amassed power of the State in such a manner that it is deemed necessary that counsel's presence is required to "preserve the basic right to a fair trial as affected by his right

---

**15.** ORS 487.805.

to meaningfully cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself." *United States v. Wade, supra.*[16] We therefore conclude that the creation of an artificially created time designation is an unacceptable resolution of the issue. "Critical stage" in the criminal process means just that. Consequently, rather than state that under all circumstances the right to counsel vests at a certain point we will instead adopt a more flexible standard under Art. I, Sec. 10 of the *Texas Constitution.* Accordingly, each case must be judged on whether the pretrial confrontation presented necessitates counsel's presence so as to protect a known right or safeguard.[17]

While under the applicable provisions of the Texas Implied Consent Statute, an accused can physically refuse to take the breathalyzer, we do not believe in doing so one has the power to revoke the implied legal consent conferred by the statute.[18] Although the Oregon Supreme Court in *Spencer v. State, supra,* rejected the ultimate holding in the *State v. Newton, su-*

*pra,* opinion, the majority specifically adopted the observation as expressed in *Newton, supra,* that "consent being implied by law, a driver may not legally refuse. A driver, however, can physically refuse to submit, and the implied consent law, recognizing that practical reality, forbids the use of physical force to compel submission." *Spencer v. State, supra,* 750 P.2d at 153. We agree that the same reasoning is applicable under our implied consent statute where special circumstances are not involved. The reasoning being:

> ... the words 'consent' and 'refusal' are not used as antonyms, because they are not used in the same sense. 'Consent' describes a legal act; 'refusal' describes a physical reality. By implying consent, the statute removes the right of the licensed driver to lawfully refuse, but it cannot remove his or her physical power to refuse.

*   *   *   *   *   *

Thus refusal as contemplated by the statute is something other than withholding

---

**16.** Appellant urges this Court to adopt as the point where the right to counsel attaches the special legal definition accorded to commencement of a "criminal action" as set out in the Texas Speedy Trial Act, Chapter 32A, C.C.P., which defines the commencement of a "criminal action" as:

> ... when an indictment, information or complaint against the defendant is filed in court, *unless* prior to the filing the *defendant is either in custody* ...

In light of *Meshell v. State,* 739 S.W.2d 246 (Tex.Cr.App.1987), declaring the act unconstitutional we find that the statute declared void *ab initio* can be of no guiding value.

**17.** Looking at past precedents of the United States Supreme Court it can be observed that under the Sixth Amendment before a stage was deemed critical counsel was indeed protecting some constitutional right which the accused had been previously afforded. In *Powell v. Alabama, supra,* counsel's presence was to protect the right to a fair trial. *Hamilton v. Alabama,* 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961), counsel's required presence was again necessary in order to protect the accused's right to a fair trial. *Escobedo v. Illinois, supra,* counsel's presence was constitutionally compelled to protect the accused's right against compulsory self-incrimination. *United States v. Wade, supra,* counsel's presence necessary to protect the accused's right to a fair trial. Although *Miranda*

*v. Arizona, supra,* was a Fifth Amendment case, the Supreme Court determined that if a suspect invoked his right, prior to or during custodial interrogation, counsel's presence was then necessary to protect the accused's privilege against self-incrimination.

**18.** Other pertinent portions of Article 6701*l*–5 are as follows:

> Sec. 2(a) Except as provided by Subsection (i) of Section 3 of this Act, if a person under arrest refuses, upon request of a peace officer, to give a specimen designated by the peace officer as provided in Section 1, none shall be taken.
>
> *   *   *   *   *   *
>
> Sec. 3(i) A peace officer shall require a person to give a specimen under Section 2 of this Act if:
>
> (1) the officer arrests the person for an offense under Subdivision (2), Subsection (a), Section 19.05, Penal Code, or an offense under Article 6701*l*–1, Revised Statutes, as amended;
>
> (2) the person was the operator of a motor vehicle involved in an accident that the officer reasonably believes occurred as a result of the offense;
>
> (3) at the time of the arrest the officer reasonably believes that a person has died or will die as a direct result of the accident; and
>
> (4) the person refuses the officer's request to voluntarily give a specimen.

consent because consent is legally implied. It is a refusal to comply with the consent which has already been given as a condition of a license to drive. *Newton, supra,* 636 P.2d at 397–398.[19]

■ Thus, in Texas by operating a motor vehicle upon the public highway consent is legally implied. It would defy both logic and common sense to assume that the Legislature of this State would imply consent, then authorize a driver to revoke that implied consent, and ultimately suspend the driver's license for exercising the right of refusal. In actuality, since the suspect has no legal choice whether to take the breathalyzer, counsel would then not be protecting any known right or safeguard by advising a suspect to refuse the test. Counsel's advice as to whether to consent to the breathalyzer under the circumstances of his client's case is a matter of strategic maneuvering, and the taking of calculated risks in the hope of lessening the chances of conviction or the dismissing of criminal charges, and does not come within the penumbra of Art. I, Sec. 10, to mandate the invocation of the right to counsel.[20] Since an accused has no legal right to withdraw his implicit consent to take the breath test (as distinguished from physically refusing

to take the test) "counsel's absence [or lack of consultation] ... [does not] derogate from the accused's right to a fair trial." *United States v. Wade, supra,* 388 U.S. at 226, 87 S.Ct. at 1932. Therefore, the time at which an accused is faced with the decision of whether to submit to a breath test is not a "critical stage" of the criminal process which necessitates either the prior consultation with or presence of counsel under the right to counsel provision of Art. I, § 10 of the Texas Constitution. Accordingly, we hold, as we did when we considered the matter under the Sixth Amendment, the "[a]ppellant's right to counsel did not attach until the time the complaint was filed." *Forte v. State,* 707 S.W.2d 89 (Tex. Cr.App.1986).

Accordingly, the judgment of the court of appeals is affirmed.

ONION, P.J., concurs in result.

CLINTON, Judge, dissenting.

That the "implied consent" statutes were originally drafted with *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), firmly in mind has been demonstrated. See Note, Driving While Intoxi-

---

**19.** The Implied Consent Statutes were initially a reaction to *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), thus the Legislature determined rather than resort to physical compulsion to compel a law enforcement demand for a blood test, the various Implied Consent Statutes "... authorized police to overcome refusal by the threat of an advance consequence, i.e., license suspension. ... [T]he objective was to create a means of non-physical coercion in order to obtain chemical samples with which to convict drunk drivers." *Id.,* 750 P.2d at 399. *Schmerber v. California, supra,* subsequently allowed blood tests against the suspect's forceable envasion of the body complied with the dictates of due process. This is recognized implicitly in Article 6701*l*–5, Sec. 3(i)(1), (2) and (3), V.A.C.S. We do not agree, though, with the conclusion reached in *Newton, supra,* that the legislative intent in enacting the Implied Consent Statute was to promote an uninformed submission rather than an informed choice. Our statute makes clear that even prior to the suspects indicating his desire to refuse chemical testing statutory warnings are required pursuant to Article 6705*l*–5, Sec. (2)(b):

Before requesting a person to give a specimen, the officer shall inform the person oral-

ly and in writing that if the person refuses to give the specimen, that refusal may be admissible in subsequent prosecution, and that the person's license, permit, or privilege to operate a motor vehicle will be *automatically* suspended for 90 days after the date of adjournment of the hearing provided for in subsection (f) of this section, whether or not the person is subsequently prosecuted as a result of the arrest [emphasis added].

We only hold that the right to counsel is not mandated in order to make the arrested person's choice informed or voluntary.

**20.** We also note that any strategic maneuvering by counsel was severely hampered by the addition of Sec. 3(g), which provides that a person's refusal to give a specimen of blood or breath may be introduced into evidence at the person's trial. See *Thomas v. State,* 723 S.W.2d 696 (Tex.Cr.App.1986). Under prior law such fact was not admissible and at least the lawyer could take his chances at trial and advise his client to refuse to take the test knowing that the refusal was inadmissible. On the other hand, we reject the State's argument that an attorney would be acting unethically in advising a suspect to refuse the test.

cated and the Right to Counsel: The Case against Implied Consent, 58 Tex.L.Rev. 935 (1980). Believing that that decision had rendered forced extraction of blood or breath for chemical testing of dubious federal constitutional validity, the legislatures of the various states appended an "implied consent" upon the privilege to drive, but in deference to *Rochin,* supra, made that consent revocable, subject, however, to certain sanctions such as suspension of the driving privilege, designed to encourage consent in fact. Implied consent statutes became anachronistic following the subsequent decision in *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), in which the Supreme Court ruled that forced extraction of blood for chemical testing with probable cause would offend neither Fourth nor Fifth Amendment principles. Clearly our Legislature now recognizes it is not *Rochin*-bound, for it has since provided that, if an accident has occurred in which someone has died or is likely to, extraction of a specimen of blood or breath is mandatory. See Acts 1983, 68th Leg., p. 1577, ch. 303, § 4, eff. Jan. 1, 1984. Likewise a dead person cannot withdraw his "implied consent," for pragmatic as well as legal reasons. *Id.* Nevertheless, under Article 6701*l*–5, V.A.C.S., any other D.W.I. suspect who is willing to suffer the consequences may refuse to give a specimen.

The majority today joins those jurisdictions which characterize this bit of statutory grace as a "power," but not a "legal right." See, e.g., *State v. Jones,* 457 A.2d 1116 (Me.1983). Because his option to refuse is subject to sanctions, reasons the majority, the suspect has no "legal choice" to make, and thus has no call to consult with an attorney before making the practical decision whether to submit to testing.* But the fact that the Legislature chose to impose sanctions in an effort to make "actual" out of "implied" consent, rather than simply to require the taking of specimens across the board, as would have been constitutionally permissible, does not make its pronouncement that, upon the suspect's re-

fusal to give a specimen, *"none shall be taken,"* any less authoritative. Is his option thus to negate the implied consent not legally enforceable? Surely we would hold, in light of this mandatory language, taken together with the clear dictates of Article 38.23, V.A.C.C.P., that any specimen forcibly taken in spite of an accused's express refusal would be inadmissible against him in a criminal trial. See *State v. Hitchens,* 294 N.W.2d 686 (Iowa 1980); *Pena v. State,* 684 P.2d 864 (Alaska 1984). Whether characterized as a "right" or merely a "power," it would seem to me the accused has been given a critical choice. As in *Copelin v. State,* 659 P.2d 1206, at 1213 (Alaska 1983), albeit in context whether a statutory right to counsel should extend:

> "[T]he law has deliberately given the arrested person a choice between two very different alternatives and potential sanctions. The arrested driver must weigh and evaluate a number of different factors. He may only be vaguely aware of some of these and need not be informed of all of them by the police. [Footnote omitted.]

> The decision as to whether to comply with an arresting officer's request to take a sobriety test is not a simple one. Clearly, an attorney's advice at this stage would not only be ethical and lawful, but helpful. The choice which an individual driver must make is a meaningful and binding one that will affect him in subsequent proceedings. * * * Given the conclusive nature of the evidence which the accused is asked to provide, this decisive point may be the *only* occasion when this statutory right is of any use."

So long as the Legislature affords the option to refuse to submit a blood or breath specimen, I would hold that Article I, § 10 of the Texas Constitution also affords a right to counsel for the suspect confronted

---

* If this is so, one must wonder why the majority rejects the State's contention that, the choice to refuse being illegal, it would be unethical for

counsel to advise that option. It would seem to follow.

with that choice. Because the majority does not so hold, I respectfully dissent.

TEAGUE, J., joins.