Ronnie Lavarra FOSTER, Appellant,

v.

The STATE of Texas, Appellee.

No. 913–86.

Court of Criminal Appeals of Texas,
En Banc.

April 11, 1990.

---

Neil C. McCabe (court appointed on appeal), Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and Roe Morris and Maria Brannon, Asst. Dist. Attys., Houston, for appellee.

Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

WHITE, Judge.

Appeal is taken from convictions for robbery, enhanced. Prior to trial, appellant moved for a consolidation of the four different robberies alleged in the four counts of the indictment into a single trial. The trial court granted the motion. On the day before the trial began, appellant waived trial by jury and elected to be tried by the court. On the same day, the State moved to dismiss the robbery alleged in Count II of the indictment, and the trial court granted the motion. The trial court convicted appellant on the remaining three robberies which were pled in the indictment. V.T. C.A., Penal Code Sec. 29.02(a)(2). At the penalty stage, appellant pled not true to both enhancement paragraphs. The trial court found appellant was previously, finally convicted of two felony offenses, V.T. C.A., Penal Code Sec. 12.42(d), and assessed his punishment at three concurrent fifty year sentences. The Court of Appeals affirmed the convictions. *Foster v. State,* 713 S.W.2d 789 (Tex.App.—1st Dist.1986).

In the Court of Appeals, appellant argued that he was unconstitutionally denied his right to counsel at a lineup which took place while he was serving a sentence on other unrelated charges. Appellant relied on both Art. I, Sec. 10 of the Texas Constitution and on the Sixth Amendment to the United States Constitution. The State responded that formal adversary judicial proceedings in the robbery cases had not commenced against appellant at the time of his lineup, rendering his claim without merit.

The Court of Appeals agreed with the State. Because appellant was incarcerated on an unrelated matter at the time of his lineup, the Court of Appeals decided formal adversarial judicial proceedings had not commenced against appellant in the robbery cases, relying upon *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), and *Forte v. State,* 707 S.W.2d 89 (Tex.Cr.App.1986). *Foster, supra,* at 790. For this reason, appellant was found to have enjoyed no Sixth Amendment right to counsel at his lineup. As for appellant's claim under the Texas Constitution, the Court of Appeals stated that Art. I, Sec. 10 does not specifically delineate when the right to counsel attaches. *Foster, supra,* at 790. Seeing no basis for giving a defen-

dant more protection under the Texas Constitution than he would enjoy under the Federal Constitution, the Court of Appeals held appellant's "right to counsel based upon the Texas Constitution ... was not violated at the time of the lineup." *Foster, supra,* at 791. This Court granted review on the issue of appellant's right to counsel at his lineup under Texas law.

In *McCambridge v. State,* 778 S.W.2d 70 (Tex.Cr.App.1989), this Court held that "under Art. I, Sec. 10 of the Texas Constitution, a critical stage in the criminal process does not occur until charges are brought against a suspect."[1] *McCambridge, supra,* at 76. Only at that time is "necessity of counsel" for a defendant compelled. *McCambridge, supra.*

In the instant case, it is undisputed that when the police conducted the lineup of robbery suspects which is the basis of this appeal, appellant was serving two misdemeanor jail sentences for driving while intoxicated and possession of marihuana. These misdemeanors were unrelated to the instant robberies. At the time of the lineup, appellant had not been arrested, charged, or indicted for any of the instant robberies. Appellant enjoyed no right to counsel at this lineup under Art. I, Sec. 10 of the Texas Constitution. *McCambridge, supra.* Appellant's right to a fair trial under Art. I, Sec. 10 was not denied.

The appellant's ground for review is overruled. The judgment of the Court of Appeals is affirmed.

TEAGUE, J., dissents.

1. The language to the contrary in *Forte v. State,* 759 S.W.2d 128 (Tex.Cr.App.1988) was overruled, *McCambridge, supra.*

1. All emphasis here and throughout is mine unless otherwise indicated.

2. Along the way to its conclusion the *Forte* Court examined historical background to the Constitution of 1876 and discerned an "attitude" of the framers seemingly reflected in the opinion of the Court in *Hamilton v. State,* 68 Tex. Cr.R. 419, 153 S.W. 331 (1913), only to conclude that the latter "paints with too broad a brush" and subsequent decisions "shed less light on the subject," *id.,* 759 S.W.2d at 134–136; accordingly, it turned to opinions from other jurisdictions and ultimately joined their views to reject the "fiction" of *Kirby,* but declined to replace it with

CLINTON, Judge, dissenting.

Here we are considering the right to counsel guaranteed by Article I, § 10, Bill of Rights, Constitution of the State of Texas.

Content to note that neither § 10 nor Articles 1.05 and 15.17, V.A.C.C.P., "specifically delineates when this right attaches," the Houston [1st] Court of Appeals declared it was "unable to find any basis upon which to interpret [§ 10] as giving a criminal defendant any greater protection than is given by the United States Constitution," and accordingly then introduced into § 10 and imposed on appellant the federal rule denying the right to counsel before *"formal adversarial judicial proceedings had commenced." Foster v. State,* 713 S.W.2d 789, at 190–791 (Tex.App.—Houston [1st] 1986).[1]

However, in *Forte v. State,* 759 S.W.2d 128 (Tex.Cr.App.1988), this Court "reject[ed] the fiction of *Kirby v. Illinois," id.,* at 137, and opted for a "critical stage" analysis to determine "whether the pretrial confrontation presented necessitates counsel's presence so as to protect a known right or safeguard." *Id.,* at 138. Suffice to say that for reasons peculiarly found in that statute, the Court decided "the time at which an accused is faced with the decision of whether to submit to a breath test is not a 'critical stage' of the criminal process which necessitates [prior consultation with counsel]." *Id.,* at 139.[2] Then suddenly in *McCambridge* it recanted.

another one, *viz:* "that the right to counsel automatically attaches ... upon the suspects [sic] formal arrest." *Id.,* at 137.

In my judgment a closer examination of those matters as they relate to this cause is in order, and in that we are aided by an articulate brief on behalf of appellant reflecting results of exhaustive research by his counsel.

In *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) the Supreme Court noted: "When the [federal] Bill of Rights was adopted, there were no organized police forces as we know them today." *Id.,* at 224, 87 S.Ct., at 1931. But in Texas when the delegates assembled in 1875, as well as the historical background summarized in *Forte,* at 134–135, the facts are that in 1871 this state was controlled by a nonelected governor who compelled

Not until *Wade* did the Supreme Court formalize the notion of a "critical stage" as a benchmark for determining whether the Sixth Amendment requires presence of counsel at a particular pretrial confronta-

enactment of an infamous "police bill," creating a state police force and placing under direct control of the state police chief, a minion of the governor, all local law enforcement officers throughout the state. The citizenry reacted with such vehement opposition that the bill was repealed in 1873. See S. McKay, *Making the Texas Constitution of 1876* (1924) 24–40. That episode no doubt contributed to the "attitude" of the framers, and there is evidence that it did: they restored the right to "demand the nature and cause of the accusation" that appeared along with the right of counsel in the 1836 Constitution of the Republic, see Declaration of Rights, Sixth, only to be abandoned in later constitutions; they also added, for the first time ever, a right "to have a copy thereof." Texans thus sought to protect themselves from police practices they well knew to be inimical to their rights.

Furthermore, they adhered to the uniquely phrased "right to counsel" provision that demonstrably was not drawn from the Sixth Amendment. As pointed out in *Forte*, at 135, framers of the 1876 constitution heeded other state constitutions including our own former constitution of 1845, but the fact is that they retained verbatim the language of Declaration Sixth as formulated in 1836. As appellant convincingly demonstrates, that language did not come from the federal Sixth Amendment, but a sister state constitution, *viz:*

"... The 1836 counsel phrasing apparently was borrowed from the Mississippi Constitution of 1832, Article I, Section 10 ('right to be heard, by himself or counsel, or both'). When the framers of the 1836 Texas counsel provision convened, the contemporary Mississippi counsel provision was the only one in the nation containing the phrase "or both." Brief, at 5–6. Except for minor stylistic preferences, the counsel clauses from Mississippi and in Texas in 1836 and 1876 are identical, and neither remotely resembles the federal right "to have the Assistance of Counsel for his defence."

If we must infer intent, motivated by contemporary experiences the intent in 1876 was that of Texas framers in 1836, and in turn that of Mississippi framers—not our federal drafters. Therefore, we find benefit in a recent interpretation by the Mississippi Supreme Court of the scope of its own constitutional right to counsel. *Page v. State,* 495 So.2d 436 (Miss 1986), *viz:*
" ... Application of [the federal Sixth Amendment] approach to our state constitutional right would be wholly unworkable ... [It has effect of providing right to counsel to accused] only after it could be said with reasonable certainty that it would no longer do him any good.... [W]e reject the federal

tion. *Id.,* Part II, 388 U.S., at 223–228, 87 S.Ct., at 1930–1932. This Court never so circumscribed the right to counsel vouchsafed by Article I, § 10, and ensured against violation by penal statute. *Ellis v.*

approach and for purposes of today's decision rely exclusively upon state law."
*Id.,* at 440, n. 1.

So also the Court found as much in *Hamilton v. State,* supra. Contrary to a belief expressed in *Forte* that "the Court was actually concerned with the right against self-incrimination rather than the right to counsel," a closer reading of the facts of the matter pertaining to Annie Wood, arrested along with defendant Hamilton and represented by same counsel, 153 S.W. from pages 332 through 335 to headnote 1, shows that the concern of the Court was with deliberate, affirmative denials of her right to counsel *before* she was forced to testify to the grand jury that Hamilton had intercourse with her. In that context the Court did not mince words, *viz:*

"The conclusion from these recitations of the record seems to be beyond cavil that [lawyer] Matthews was the attorney of this woman; that he had been employed by her, and this defendant as well, when they were first arrested and placed in jail; that he prepared bond for them, and undertook to prepare the defense[.].... Before answering [to the grand jury], she had the right to confer with her attorney about these matters, whether she was a witness or defendant, or both. Instead of giving her this right guaranteed by the Constitution and laws of this state, they placed her in jail, strictly incommunicado ... and they refused to let her communicate or advise with her attorney about her legal rights, or what she should do in the premises, or whatever she desired to ascertain. * * * *"

*Id.,* 153 S.W. at 335. Only then did the Court suggest that the trial court and others "overlooked" former article 1046, P.C. 1911, which after quoting and paraphrasing it, the Court pointed out:
"... It is not necessary that the party desiring counsel should be preparing a defense against some accusation *after an indictment found* or after arrest. The statute is broader and fully comprehends every possible situation in which an accused person or person under arrest or not under arrest desires to consult with counsel, or communicate with counsel, or obtain advice or services of counsel in the protection of his rights, or even supposed legal rights. * * * * Under [the record] there has been shown a clear and palpable violation of article 1046, P.C., supra, and a clear and palpable violation of the Constitution and Bill of Rights."

*Id.,* 153 S.W. at 336. Accord: *Nothaf v. State,* 91 Tex.Cr.R. 378, 239 S.W. 215, 217–218 (1922). Former article 1046 became article 1176, P.C. 1925, which was melded with kindred offenses

*State,* 149 Tex.Cr.R. 583, 197 S.W.2d 351, at 353 (1946); *McBride v. State,* 121 Tex. Cr.R. 549, 51 S.W.2d 337, at 339 (1932); *Turner v. State,* 91 Tex.Cr.R. 627, 241 S.W. 162, at 163–164, 23 A.L.R. 1378 (1922); *Hamilton v. State,* 68 Tex.Cr.R. 419, at 427, 153 S.W. 331, at 335–336 (1913).

In opting for a "critical stage" analysis in *Forte,* the majority departed from principles of representation by counsel that our first framers undertook to preserve for posterity. *McCambridge* renounces them, preferring a brightline rule, and today the majority causes the Court to apply that rule to deny the right to counsel under the Constitution of this State.

Given the innumerable dangers and variable factors in a lineup confrontation, a criminal defense lawyer has important functions to perform to protect interests of the client. See *Wade,* supra, 388 U.S. at 223–234, 235–239, 87 S.Ct., at 1932–1936, 1936–1939. Accordingly, without making any such analysis or using a "brightline rule," but relying on the Constitution and law of this State I would hold that failure to honor appellant's request for assistance of counsel at the lineup violated his right to counsel under Article I, § 10.

Therefore, I respectfully dissent.

into "official oppression" denounced by V.T.C.A.