Dennis Michael McCAMBRIDGE,

v.

The STATE of Texas, Appellee.

No. 297–87.

Court of Criminal Appeals of Texas, En Banc.

Sept. 13, 1989.

J. Gary Trichter, Brian Wice, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., William J. Delmore, III and Jon Munier, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

DUNCAN, Judge.

The appellant was convicted of driving while intoxicated. Granting his first petition for discretionary review in *McCambridge v. State*, 712 S.W.2d 499 (Tex.Cr.

App.1986), we affirmed the judgment of the First Court of Appeals holding *inter alia*, that under the Sixth Amendment to the United States Constitution the "[a]ppellant's right to counsel did not attach until the complaint and information were filed." *Id.*, at 502. Consequently, under the Sixth Amendment, the appellant was not entitled to consult with an attorney prior to taking the breath test.

This Court, observing that the court of appeals failed to address the appellant's other constitutionally predicated claims for relief, remanded the case to the court of appeals. The appellant's contentions that the court of appeals was to review upon remand were as follows: that the appellant had a right to consult with an attorney before providing the police with a breath sample for an intoxilyzer test under the right to counsel provision of Art. I, § 10 of the Texas Constitution; that he also had a right to counsel under the due process clause of the Fourteenth Amendment to the United States Constitution, and under the due course of law provision of Art. I, § 19 of the Texas Constitution. In its opinion following the remand, the court of appeals rejected the appellant's contentions. *McCambridge v. State*, 725 S.W.2d 418 (Tex.App.—Houston [1st] 1987).

Relative to the appellant's contention that he was entitled to counsel prior to the breath test under Art. I, § 10 of the Texas Constitution and Art. 1.05, V.A.C.C.P., the court of appeals stated: "the right to counsel provision of our state constitution does not provide any greater protection in this respect than is afforded by the United States Constitution." *McCambridge v. State*, supra, at 420. Thus, one's right to counsel under Art. I, § 10 of the Texas Constitution "attaches only upon formal initiation of judicial proceedings." *Id.*, at 420.

Apparently after this Court remanded this cause to the court of appeals, the appellant, for the first time, claimed that he was denied his right to counsel in violation of Articles 15.17 and 38.22, V.A.C.C.P. The court of appeals summarily disposed of these issues by declining to review the

claims because of appellant's unexplained procedural default.

Finally, the Court overruled appellant's grounds of error dealing with being denied due process and due course of law under the provisions of the Federal and State Constitutions, and also under Article 1.04 of the Texas Code of Criminal Procedure. Finding that the due course of law provisions of the Texas Constitution and its statutory progeny provide no greater protection than that of its federal equivalent, the Court held that denial of counsel before deciding whether to submit to a breath test under the circumstances of this case did not reflect a violation of the basic "decencies of civilized conduct," *id.*, at 421–422, and therefore there was no basis to conclude that appellant was denied either due process or due course of law under the respective constitutions.

This Court granted appellant's petition for discretionary review in order to determine the correctness of the court of appeals opinion relative to the following grounds for review:

1. Whether the court of appeals erred in determining that appellant's breath test result was obtained in violation of the right to counsel provision of Article 1, § 10 of the Texas Constitution.

2. Whether the appellant had a right to counsel under Articles 1.05, 15.17, and 38.22 of the Texas Code of Criminal procedure.

3. And, whether the court of appeals erred in determining that the due process and due course of law provisions of the Federal and State Constitutions respectively, as well as Article 1.04 of the Texas Code of Criminal Procedure did not require the assistance of counsel before appellant made a decision as to whether he should take the breath test.

■ ▮ We will affirm the judgment of the court of appeals. In *Forte v. State*, 759 S.W.2d 128 (Tex.Cr.App.1988), this Court held "[t]he time at which an accused is faced with decision of whether to submit to a breath test is not a 'critical stage' of the criminal process which necessitates either the prior consultation or presence of counsel under the right to counsel provision of Article I, § 10 of the Texas Constitution." *Id.*, at p. 139. We therefore reject the appellant's claim made pursuant to Article I, § 10 of the Texas Constitution.

▮ We also find that his assertions made under Articles 1.05, 15.17 and 38.22 of the Texas Code of Criminal Procedure, are likewise without merit. Rather than invoke the waiver doctrine, we will resolve these collateral issues as a matter of judicial economy. As to Article 1.05,[1] *supra*, it

---

1. Article 1.05, *supra,* reads as follows:

    In all criminal prosecutions the accused shall have a speedy public trial by an impartial jury. He shall have the right to demand the nature and cause of the accusation against him, and have a copy thereof. He shall not be compelled to give evidence against himself. He shall have the right of being heard by himself, or counsel, or both; shall be confronted with witnesses against him, and shall have compulsory process for obtaining witnesses in his favor. No person shall be held to answer for a felony unless on indictment of a grand jury.

    The pertinent portion of Article 15.17, *supra,* states:

    (a) In each case enumerated in this Code, the person making the arrest shall without unnecessary delay take the person arrested or have him taken before some magistrate of the county where the accused was arrested or, if necessary to provide more expeditiously to the person arrested the warnings described by this article, before a magistrate in a county bordering the county in which the arrest was made. The magistrate shall inform in clear language the person arrested of the accusation against him and of any affidavit filed therewith, of his right to retain counsel, of his right to remain silent, of his right to have an attorney present during any interview with peace officers or attorneys representing the state, of his right to terminate the interview at any time, of his right to request the appointment of counsel if he is indigent and cannot afford counsel, and of his right to have an examining trial. He shall also inform the person arrested that he is not required to make a statement and that any statement made by him may be used against him. The magistrate shall allow the person arrested reasonable time and opportunity to consult counsel and shall admit the person arrested to bail if allowed by law.

    The applicable portion of Article 38.22(2)(a), *supra,* reads:

    (a) the accused, prior to making the statement, either received from a magistrate the warnings provided in Article 15.17 of this

is obvious that it is merely the codified statutory progeny of Article I, § 10 of the Texas Constitution and we can find no authority which would indicate that the Legislature intended an expansion of rights other than those set out in the constitutional provision.

■ Nor can we glean from Article 38.-22, *supra*, a Legislative intent that would statutorily provide a right to counsel prior to the administration of the chemical sobriety test. Just recently in *Bass v. State*, 723 S.W.2d 687 (Tex.Cr.App.1986), this Court held "[b]ecause '[i]n the context of an arrest for driving while intoxicated, a police inquiry of whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of [the Fifth Amendment],' *McCambridge v. State*, 712 S.W.2d 499 (Tex.Cr.App.1986), quoting *South Dakota v. Neville*, 459 U.S. [553] at 564, n. 15, 103 S.Ct. [916] at 923, n. 15 [74 L.Ed.2d 748 (1983) ], we do not think such inquiry constitutes an 'interrogation' for purposes of Article 38.22, supra." *Id.*, at 691. This reasoning is equally applicable to appellant's claim asserted under Article 15.17, *supra*, as the warnings made mandatory in that provision are but part of the predicate set forth in Article 38.22(2)(a), *supra*, which is necessary for the introduction of a written statement of an accused. Further, there is nothing in the record to suggest that a magistrate prevented the appellant from contacting counsel. Therefore, the appellant's claims grounded upon the various statutory right to counsel provisions are therefore denied.

■ In three grounds for review the appellant claims that the due process clause of the Fourteenth Amendment and independently Art. I, § 19 of the Texas Constitution (due course of law) and its statutory equivalent, Article 1.04, V.A.C.C.P., create a "limited right to counsel to guarantee fairness ..." to the appellant. In other words, the appellant claims that the due process clause of the Federal Constitution and its state counterpart (due course of law provision in Art. I, § 19, *Tex. Const.*) are either jointly or independently the basis of a right to counsel under the Sixth Amendment of the United States Constitution or Art. I, § 10 of the Texas Constitution.

Relative to the appellant's Fourteenth Amendment due process claim, in *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932),[2] the United States Supreme Court did ignore the Sixth Amendment's right to counsel provision and instead concluded that the due process clause of the Fourteenth Amendment required the states to provide counsel to a defendant exposed to the death penalty. The philosophical basis for the Court's decision was essentially that fundamental fairness demanded the appointment of counsel because without counsel the defendant would be deprived of a fair trial.

The practical basis of the Court's utilization of the due process clause in its decision was not nearly so esoteric: in 1932, the Supreme Court had not yet begun to selectively apply the Bill of Rights to the states. Consequently, the fundamental fairness analysis was the prevailing analysis.

Nevertheless, through *Powell* and several cases decided after *Powell: Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), *Betts v. Brady*, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942), the Court made it clear that a constitutional right to counsel could be derived from both the due process clause of the Fourteenth Amendment and the Sixth Amendment.

code or received from the person to whom the statement is made a warning that:

(1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

(2) any statement he makes may be used as evidence against him in court;

(3) he has the right to have a lawyer present to advise him prior to and during any questioning;

(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

(5) he has the right to terminate the interview at any time; and

\*　　\*　　\*　　\*　　\*　　\*

2. See *Forte v. State*, supra, n. 17, p. 138 for a more a thorough discussion of *Powell v. Alabama*, supra.

However, in 1963 that, insofar as criminal prosecutions are concerned, changed. In *Gideon v. Wainright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the United States Supreme Court concluded that the Sixth Amendment was applicable to the states through the Fourteenth Amendment. Thus, at least in this context, it became unnecessary to employ the due process clause and a fundamental fairness analysis to determine if a state is obligated to provide counsel to an indigent defendant.

That, however, did not automatically eliminate the principle that due process is an independent source for a right to counsel. For example, in *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the Supreme Court concluded that because of the due process clause welfare recipients could not have their benefits terminated without an evidentiary hearing. In addition, the Court, citing *Powell v. Alabama*, supra, decided that the welfare recipient had a right to be represented by counsel at such evidentiary hearing. At the foundation of *Goldberg v. Kelly*, supra, was the observation that " '[t]he fundamental requisite of due process of law is the opportunity to be heard.' " *Id.*, at 267, 90 S.Ct. at 1020. So, the Court's deriving a right to counsel guarantee from the due process clause was done simply to insure that "[t]he fundamental requisite of due process of law . . .," *id.*, a fair hearing, was achieved.

Later, in *In Re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), the Supreme Court held that due process imposes an obligation on the states to provide appointed counsel for indigent defendant's in all juvenile delinquency proceedings "which may result in commitment to an institution in which the juvenile's freedom is impaired." *Id.*, at 41, 87 S.Ct. at 1451.

Similarly, in *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the Supreme Court concluded that due process required a state to provide appointed counsel in parole or probation revocation proceedings where the facts of a particular case are such that the appointment of counsel is necessary to ensure the fairness of the hearing.

The Supreme Court has also utilized the due process clause of the Fourteenth Amendment to compel the states to provide to indigent defendants not only counsel on appeal, *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), but effective counsel on appeal. *Evitts v. Lucy*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985).

The Supreme Court has not yet expressly reconciled the constitutional duality of the right to counsel guarantees as expressly provided in the Sixth Amendment and implicitly provided in the Fourteenth Amendment to guarantee a fair hearing, as initially recognized in *Powell v. Alabama*, supra. Despite their often combining, and therefore confusing, the two principles (see: *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)), it appears that at least since *Gideon v. Wainright*, supra, the due process guarantee of counsel has been restricted to civil proceedings (*Goldberg v. Kelly*, supra), quasi-civil proceedings (*Gagnon v. Scarpelli*, supra; *In Re Gault*, supra), or appeals (*Douglas v. California*, supra). The Sixth Amendment's guarantee of counsel on the other hand has been restricted to proceedings that are identified in the Sixth Amendment —"criminal prosecutions." See: LaFave & Israel, *Criminal Procedure* § 11.1 (West Publishing Co.: St. Paul, Minn., 1984).

A driving while intoxicated prosecution is unquestionably a "criminal prosecution;" therefore, based upon the foregoing analysis, there is no due process right to counsel guaranteed by the Fourteenth Amendment. One's right to counsel in a DWI prosecution is guaranteed by the Sixth Amendment.

The appellant relies principally upon *Sites v. State*, 481 A.2d 192 (Md.1984) to support his due process claim. In *Sites* the Maryland Court of Appeals concluded that their implied consent statute did not statutorily grant to one a right to counsel. Furthermore, the court concluded that since the decision to take a breath test was not a critical stage of the criminal process there

was no Sixth Amendment right to counsel. Conversely, however, the court concluded that the due process clause of the Fourteenth Amendment and their state constitution's due process clause provided a DWI suspect with a limited right to counsel.

Ignoring the "critical stage" analysis, applicable to claims of right to counsel under the Sixth Amendment, the Maryland Court concluded that because of the mandatory driver's license suspension, statutorily required of one who refuses the breath test, access to counsel is a constitutional imperative.

We reject the Maryland Court's analysis and its conclusion for a number of reasons. First, the court concludes that the Fourteenth Amendment is an independent source for a right to counsel and cites principally *Goldberg v. Kelly,* supra. However, as we previously noted, *Goldberg v. Kelly,* supra, followed *Gideon v. Wainright,* supra, and the latter's selective application of the Sixth Amendment to the states. Further, it is a civil proceeding. The other cases cited by the Maryland Court are similarly distinguishable.

Second, the court does not explain how deciding to take the breath test is not a critical stage of the criminal process and is yet a decision that offends fundamental fairness if made without the assistance of counsel. Thus, the opinion contains an internal contradiction.

Even if we were to conclude that the Fourteenth Amendment was an independent source of one's right to counsel it would still be necessary to distinguish a time in the criminal process that the right would become effective. In Sixth Amendment cases that has been identified as the "critical stage" and is normally after a criminal complaint is filed. *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), *Forte v. State,* supra. Consistency would therefore demand that the same critical stage analysis be applicable to a right to counsel under the Fourteenth Amendment. If we were to hold otherwise we would be engaging in the same erroneous analysis as the Maryland Court of Appeals: the determination

whether to submit to a breath test demands the assistance of counsel if fundamental fairness is to be achieved, but such decision is not a critical stage of the investigative process. With due respect to the Maryland Court of Appeals, such a conclusion is illogical.

Therefore, we conclude that in the context of this proceeding the appellant did not have a right to counsel under the Fourteenth Amendment.

■ Relative to this "critical stage" analysis, in *Forte v. State,* supra, we agreed with the Oregon Supreme Court in *State v. Spencer,* 750 P.2d 147 (Or.1988), that the United States Supreme Court's critical stage designation as being dependent upon the initiation of adversary criminal proceedings, as set forth in *Kirby v. Illinois,* 406 U.S. 682 (1972), was flawed, because it constituted a contrived departure from the standards established in *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). Or, "[t]he line drawn by the [Supreme] Court in *Kirby* seems to be nothing but a 'mere formalism.'" Miller, "Right to Counsel: State Courts on the Front Line," *Annual Survey of American Law,* p. 179 (1984).

Having rejected as artificial the determination that a critical stage in the process occurs only after the filing of a complaint, we instead decided that the "critical stage" in the criminal process should be determined on a case by case basis and "must be judged on whether the pretrial confrontation presented necessitates counsels' presence as to protect a known right or safeguard." *Forte v. State,* supra, at 138.

Since making that determination, however, we have concluded that the classification of a period in the criminal process as "critical" on a case by case basis is ambiguous, vague, and thus unworkable. Consistency is the objective of any legal standard. If consistency can be achieved it benefits both law enforcement and the public. Consequently, although we do not depart from our conclusion that the reasoning in *Kirby* cannot be logically reconciled with the con-

verse reasoning in *Wade* and *Gilbert*, we are nonetheless persuaded that by adopting a bright line rule establishing when the critical stage in the criminal process occurs the public will ultimately benefit.

In *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Supreme Court, giving substance to what it said in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), held that an accused person in custody who has "expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, supra, at 484–485. Three years later the Supreme Court emphasized the decisive nature of their holding in *Edwards*, by declaring that "Edwards established a bright line rule to safeguard pre-existing rights." *Solem v. Stumes*, 465 U.S. 638, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984).

The intent of the Supreme Court in *Edwards* was to create a conclusive rule that would be immune from the vagaries that invariably accompany diverse factual encounters. By establishing a hard and fast rule in *Edwards*, the Court was striving to not only insure a suspect's Fifth Amendment rights, but also give to law enforcement authorities a distinct and definable boundary beyond which they cannot legitimately venture.

In *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), again emphasizing the bright line nature of the *Edwards* holding, the Court extended *Edwards* to violations of one's right to counsel under the Sixth Amendment. In doing so, the Court confirmed that a suspect's right to counsel under the Sixth Amendment does not arise until the criminal process has progressed to a "critical stage." Citing *United States v. Gouveia*, 467 U.S. 180, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984), the Court noted that a "critical stage" emerges only after the initiation of adversary proceedings. In reaching its decision, the Court again emphasized the " 'bright

line' quality ...," *Michigan v. Jackson*, supra, at 634, of the *Edwards* decision.

More recently, in *Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), the Supreme Court was requested "to craft an exception to that rule for cases in which the police want to interrogate a suspect about an offense that is unrelated to the subject of their initial interrogation." *Id.*, 108 S.Ct. at 2096. The Court refused to create such an exception and as they did in *Michigan v. Jackson*, supra, stressed the "virtues of a bright line rule...." *Arizona v. Roberson*, supra, at 2098. The Court observed that *Edward's* bright line rule, as a relatively rigid requirement, "has the virtue of informing police and prosecutors with specificity as to what they may do in conducting custodial interrogation, and of informing courts under what circumstances statements obtained during such interrogation are not admissible." *Id.*, at 2098.

Establishing a bright line rule relative to when a "critical stage" of the criminal process arises under Art. I, § 10 of the Texas Constitution will have similar beneficial consequences. Further, the creation of a bright line rule results in predictability. In addition, judicial review can be more precise, but, most important, it gives law enforcement authorities the parameters within which they can legally operate. At the present time law enforcement has to speculate whether a stage in the process is critical so as to compel the necessity of counsel. Speculation about one's legal right is a burden law enforcement should not have to carry.

Therefore, we now hold in the context of this case that under Art. I, § 10 of the Texas Constitution, a critical stage in the criminal process does not occur until formal charges are brought against a suspect. The language in *Forte v. State*, supra, to the contrary is overruled.

■ Relative to the appellant's remaining grounds for review, we also conclude that Art. I, § 19 (due course of law) and Art. 1.05, V.A.C.C.P., do not confer a right to counsel independent of that guaranteed by Art. I, § 10 of the Texas Constitution.

There is absolutely no reason to engraft upon either Art. I, § 19 or Art. 1.05, V.A.C. C.P., a substantive right to counsel when that same right is expressly provided in Art. I, § 10 of the Texas Constitution.

Accordingly, the judgment of the court of appeals is affirmed.

CLINTON, J., disagreeing that "consistency" demands a "critical stage analysis" to assistance of counsel under due process and due course of law, respectfully dissents.

TEAGUE, Judge, dissenting.

Today, this Court is given the opportunity to give true meaning to the provisions of Art. I, § 10, of the Texas Constitution. Because it does nothing less than adopt in principle what the present archconservative Supreme Court's majority has already written and held, in its construction of the federal constitution, I respectfully dissent.

Over thirty years ago, Justice Douglas of the United States Supreme Court, when that Court was a conservative court, opined in the dissenting opinion that he filed in *Crooker v. California*, 357 U.S. 433, 78 S.Ct. 1287, 1296, 2 L.Ed.2d 1448 (1958): "The demands of our civilization expressed in the Due Process Clause [of the Fourteenth Amendment] require that *the accused who wants a counsel should have one at any time after the moment of arrest.*"

I firmly believe that a majority of the citizens of Texas, if given the opportunity, would vote for what Justice Douglas stated. Today, however, a lackluster majority of this Court *declines* to hold that under Art. I, § 10, of the Texas Constitution, the "Rights of the Accused in Criminal Prosecutions" clause,[1] an individual lawfully arrested for allegedly committing the offense of driving while intoxicated has the right to the assistance of counsel from that point forward; they opt instead to hold that such a person has the right to the assistance of counsel *only* after formal criminal charges have been filed, which act apparently lies in

the discretion of the police as to just when that must occur.

I believe that this Court has the duty to protect the rights of the citizens of this State. Also see the dissenting opinions that I filed in *McCambridge v. State*, 712 S.W.2d 499, 507 (Tex.Cr.App.1986); *Bass v. State*, 723 S.W.2d 687, 692 (Tex.Cr.App. 1986); *Thomas v. State*, 723 S.W.2d 696, 716 (Tex.Cr.App.1986); *McGinty v. State*, 723 S.W.2d 719, 722 (Tex.Cr.App.1986). Today, however, a majority of this Court fails to perform that legal duty that all of its members, either expressly or implicitly, agreed to perform when they took office.

I confess: I suscribe to the viewpoint that, no matter what criminal offense the accused is arrested by the police for allegedly committing, and no matter what kind of incriminating evidence the police thereafter seek from him, he is entitled to be first warned by the arresting officer of all known criminal legal rights that he might have, which, of course, includes the right to have the assistance of counsel from the point of arrest, and if he does not affirmatively and unequivocally waive all of his known legal rights, any and all incriminating evidence, no matter the form such might come in, that was seized or obtained from him by the police, should be suppressed at his trial, if such trial occurs. I believe that this stage of the criminal process is part of the "criminal prosecution." See Art. I, § 10, *Texas Constitution.*

Given what the majority opinion states and holds, I ask: Does a person who has been lawfully arrested by the police for allegedly committing the offense of driving while intoxicated have any federal or state criminal legal rights prior to being formally charged by the police? No where in the majority opinion in this cause, the majority opinion in *Forte v. State*, 759 S.W.2d 128 (Tex.Cr.App.1988), and the majority opinions in the above cited cases of this Court are we told what legal rights, if any, such an individual has. If they exist, the majori-

---

**1.** In pertinent part, Art. I, § 10, supra, provides that the accused "shall have the right of being heard by himself or counsel, or both."

ty opinion should tell us what they are. Of course, if no legal rights exist, the majority opinion should state in big, bold print that an individual who has been lawfully arrested for driving while intoxicated, and formal charges have not yet been filed, has no criminal legal rights at that stage of the process, such as the right to have the assistance of counsel, and that our men in blue, where all they seek from such a defendant is for him to act or perform on video, much like a mime might do, or submit a blood, breath, urine, or some other bodily substance specimen, should not give the *Miranda* warnings to those defendants, because all that the giving of such warnings do is cause confusion, both in the field, at the station house, and in both trial and appellate courtrooms.

What frightens me about the above majority opinions, and the one in this cause, is that much of what has been written can be read out of the context that the offense in all of these causes is driving while intoxicated. For unknown reasons, a person lawfully arrested in Texas for driving while intoxicated is to be treated differently from a person who has been lawfully arrested for committing some other criminal wrong.

Why isn't the stage of the criminal process where the individual has been lawfully arrested but not yet formally charged for allegedly driving while intoxicated not a part of the "criminal prosecution?" See Art. I, § 10, of the Texas Constitution. Why isn't such an accused person entitled to receive the benefit of at least the criminal legal rights set out in that section of the Constitution, unless he affirmatively waives those rights? The majority implicitly, if not expressly, holds that such an individual has no criminal legal rights until formal criminal charges have been filed by the police. Although it is the rare case where the police might use physical violence on the accused, see and compare, however, *Ashcraft v. Tennessee*, 322 U.S. 143, 64 S.Ct. 921, 88 L.Ed. 1192 (1944), he is certainly subject to all sorts of mental pressure by merely being in the physical custody of the police. He certainly needs at least the guiding hand of counsel when he finds himself in that situation.

The term "criminal prosecution" is not defined in our Penal Code, in the Code of Criminal Procedure, or in the Texas Constitution. However, the Supreme Court of Texas in *Fariss v. Tipps*, 463 S.W.2d 176 (Tex.1971), held that a revocation of probation proceeding is a "criminal prosecution" within the meaning of Art. I, § 10, of the Texas Constitution, and that such a defendant has the criminal legal right to a speedy hearing on the State's motion to revoke. In construing Art. 24 of the former Penal Code, which provided: "A 'criminal action' means the whole of any part of the procedure which the law provides for bringing offenders to justice; and the terms 'prosecution' and 'accusation' are used in the same sense", Chief Justice Calvert, in writing for the Court, concluded: "By this provision a 'criminal prosecution' expressly includes a proceeding in which probation may be revoked and sentence imposed." (178–179). Art. 24 was previously Art. 26 of the 1911 Penal Code, which read: "A 'criminal action,' as used in this Code, means the whole and any part of the procedure which the law provides for bringing offenders to justice; and the terms 'prosecution,' 'criminal prosecution,' 'accusation,' and 'criminal accusation,' are used in the general sense." Also see *Bautsch v. City of Galveston*, 11 S.W. 414 (Tex.Ct.App.1889). Thus, there is authority for holding that an accused individual, who has been lawfully arrested for allegedly committing a criminal wrong, and who has not been formally charged for that offense, is entitled to all the criminal legal rights provided in Art. I, § 10, of the Texas Constitution, because that stage of the process is part of the procedure which the law provides for bringing offenders to justice.

Perhaps what causes the majority unwilling to construe Art. I, § 10, supra, to mean that an individual who has been lawfully arrested for driving while intoxicated is entitled to have the criminal legal right to the assistance of counsel lies in the fact that this Court "has not yet staked out a Texas constitutional protection any more solicitous than that required by the federal constitution." Harrington, *The Texas Bill*

*of Rights: A Commentary and Litigation Manual* (Butterworth, 1987), at page 161. In short, in recent times, it was not this Court that first ruled that an individual who had been lawfully arrested had certain criminal legal rights at that stage of the criminal process. It was a moderate Supreme Court of the United States that gave us most pre-trial constitutional rights that now exist. Of course, because that Court gave meaning to those rights, when its membership changes, a majority of that Court is free to vote to diminish or destroy those criminal legal rights that a more enlightened majority had previously given birth to.

Because the Supreme Court of the United States in recent times withdrew from its role as champion of individual rights, see *Brown v. State*, 657 S.W.2d 797, 808 (Tex. Cr.App.1983) (Teague, J., dissenting), it is now necessary, where this Court desires to see that individual rights are protected more under the Texas Constitution and Texas statutory laws than under the Federal Constitution, for it to "discern the meaning of constitutional protection in Texas and apply it with the same courage which our predecessors showed in risking, and sometimes giving their lives for the promise of liberty." Harrington, supra, at page 2. Where an appellate court chooses to write on a new slate, this is labeled in some quarters as "The New Federalism." See, for example, Harrington, supra; Duncan, "Terminating The Guardianship: A New Role for State Court", 19 *St. Mary's Law Journal* (1988); Bamberger, Chairperson, *Recent Developments in State Constitutional Law* (Practicing Law Institute, 1985); "Civil Liberties Under The Texas Constitution", *A Seminar Sponsored by the San Antonio Bar Association and the American Civil Liberties Union*, 1987; Linde, "First Things First: Rediscovering The States' Bill of Rights," 9 *U.Balt.L.Rev.* 379 (1980); Hingson, *How to Defend a*

*Drunken Driving Case* (Clark Boardman, 1987).

In this instance, the majority opinion holds: "[W]e conclude that in the context of this proceeding the appellant did not have a right to counsel beyond that provided by the Sixth Amendment", which holding I find is consistent in principle with what the present arch-conservative Supreme Court of the United States has already stated. See *Pennsylvania v. Bruder*, —— U.S. ——, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988), which implicitly, if not expressly, overruled *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), which held that the police are required to give the defendant, who has been arrested for allegedly committing a misdemeanor traffic offense, such as when the defendant has been arrested by the police for allegedly committing the offense of driving while intoxicated, the "Miranda" warnings.

In this Court's most recent *Forte*, supra, opinion, it was held that in a driving while intoxicated case, "It is not the point of arrest which triggers the Art. I, Sec. 10 [Texas Constitution] right to counsel but rather *whether an individual is confronted with the amassed power of the State in such a manner that it is deemed necessary that counsel's presence is required to 'preserve the basic right to a fair trial ....'*" (My emphasis.) If such statement is not meant to be limited or restricted to the courtroom stage of the process, then I assume that in making the determination whether the accused is entitled to have the assistance of counsel at the "breathalyzer" stage of the process, we must look at the facts of the particular case.

The facts of this cause that relate to police conduct at the "breathalyzer" stage of the process, which did not then implicate or concern the "courtroom" stage of the process, fit the above quote to a T.[2] And yet, notwithstanding the egregious police facts that are present in this record, a

---

2. I dare say that, if one relayed to another person the following facts, and asked him did they occur in the State of Texas, or did they occur in some third world country, the other person would immediately respond: "Not in the

State of Texas!" But dear reader, he would be dead wrong, because the following facts did occur in good ole Texas, U.S.A., and not in some third world country.

majority of this Court holds that appellant was not entitled to have the assistance of counsel. I am compelled to ask: Given the horrible police facts of this cause, if appellant was not entitled to have the assistance of counsel at the "breathalyzer" stage of the process in this cause, then when, if ever, will any individual who has been lawfully arrested and accused by the police of allegedly driving while intoxicated, who has not been formally charged, be entitled to have the assistance of counsel at that stage of the process· if all that the police want him to do is perform on video and submit a breath or blood specimen?

For reasons not in the record, the police failed to comply with Art. 14.06, V.A.C.C.P., which prescribes the following: "In each case enumerated in this Code, the person making the arrest shall take the person arrested or have him taken without unnecessary delay before the magistrate who may have ordered the arrest or before some magistrate of the county where the arrest was made without an order. The magistrate shall immediately perform the duties described in Article 15.17 of this Code." Art. 15.17, V.A.C.C.P., expressly provides, inter alia, that the accused person shall be warned by the magistrate that he has the right to have the assistance of counsel.[3] The failure by the police to comply with the terms of Art. 14.06, supra, in this cause can perhaps be explained by the fact that this Court has never seen fit to enforce the provisions of Art. 14.06, supra. See, however, the dissenting opinion that I filed in *Williams v. State*, 692 S.W.2d 671, 680 (Tex.Cr.App.1984), which suggested that this Court should commence seeing that that statute, whose validity has not to my knowledge ever been challenged, was enforced in Texas.

After the police arrested appellant, they "Mirandized" him, warning him, inter alia, that he then had the right to have the assistance of counsel, after which appellant affirmatively made known to the arresting officers that he wanted the assistance of counsel at that stage of the process. Of course, at that point in time it would have been virtually impossible for the police to have afforded him the assistance of counsel. Thus, it is understandable why the police told him that that he could not have counsel at that time but that he could receive the assistance of counsel when he got downtown at the station house. Thereafter, while appellant was in the videotaping room of the station house, where he was continuously harassed by the police to take the breathalyzer test, *on at least nine separate occasions* he requested the assistance of counsel, which requests were ignored by the police.

After appellant made his tenth request for the assistance of counsel, the police removed him from the videotaping room, after which, apparently while standing in a hallway, police officers continued to harass him by exerting mental pressure on him to get him to take the breath test. *Eight more times appellant refused to submit to the test.* Finally, much like a prisoner of war in a third world country might have done, *after he had made his eighteenth request of the police for the assistance of counsel,* with each request being denied by the police, appellant discontinued requesting the assistance of counsel and finally took the intoxilizer test, which test the record makes clear he did not want to take until after he had consulted with an attorney. At his trial, over objection, the trial judge admitted into evidence the result of the breath test, which, because appellant failed the test, was highly damaging to his case.

The above facts are obviously not shocking to a majority of this Court, although they are certainly shocking to me, and I believe that they will easily shock the conscience of the average citizen of this State who becomes aware of them. However, see and compare the facts that are set out in *Collins v. State*, 352 S.W.2d 841 (Tex.Cr. App.1962), which did not shock the con-

---

**3.** There is no dispute that appellant was arrested by the police for driving while intoxicated. Art. 15.22, V.A.C.C.P., provides: *"A person is arrested* when he has been actually placed under restraint or taken into custody by an officer or person executing a warrant of arrest, or by an officer or person arresting without a warrant." (My emphasis.)

science of this Court but were so shocking to the conscience of the Fifth Circuit that it granted the defendant relief, see *Collins v. Beto*, 348 F.2d 823 (5th Cir.1965).[4] But compare *Dunn v. State*, 696 S.W.2d 561 (Tex.Cr.App.1985), where an enlightened majority of this Court that was led by Judge Campbell went to extreme lengths in another egregious police factual situation to guarantee the defendant in that cause, who had been arrested and was then in the custody of the police for murdering his father, the right to have the assistance of counsel at that point in time, notwithstanding the fact that the defendant did not even know the attorneys who were trying to make contact with him, or that they were even attempting to contact him. However, given what the majority of this Court has been holding in recent times in this area of the law, and in particular given what it holds in this cause, *Dunn*, supra, may now be an aberration in our law when it comes to an accused person having the right to have the assistance of counsel during the pretrial or pre-formal charge stage of the process.

When this cause was previously before this Court, this Court ruled that (1) there was no denial of appellant's *Sixth Amendment* right to counsel when he was requested to submit to a breath test, because formal adversary proceedings had not been initiated against him at that time, and (2) the police did not violate appellant's *Fifth Amendment* rights under decisions of the Supreme Court of the United States by continuing to ask him whether he would willingly take the breath test, because this did not amount to custodial interrogation. This Court ordered the cause remanded to the court of appeals for that court to make the determination whether the right to counsel provision under Art. 1, § 10, of the Texas Constitution and the Due Process Clause of the Fourteenth Amendment to the Federal Constitution had been violated. See *McCambridge v. State*, 712 S.W.2d 499 (Tex.Cr.App.1986).

For reasons that I expressed in the dissenting opinion that I filed in this Court's majority *McCambridge* opinion, I believed then, and still do, that unless this Court intended to invoke "The New Federalism", see *ante*, remanding this cause to the court of appeals was performing a useless task, especially given what this Court's majority had already stated in its opinion of *Forte v. State*, 707 S.W.2d 89 (Tex.Cr.App.1986), which is this Court's first *Forte* opinion. Furthermore, given what this Court has previously stated on the subject, and what the court of appeals stated in this cause on remand, one must wonder why, given what the majority writes, a majority of this Court needlessly spends additional time on this cause.

I pause to point out that the respective and competing views on whether the accused in a driving while intoxicated case has the right to the assistance of counsel, after his arrest and prior to formal criminal charges being filed, are probably best reflected by this Court's majority opinion in its latest *Forte*, supra, opinion and what the Fort Worth Court of Appeals stated in its original and well reasoned opinion by Justice Ashworth of *Forte v. State*, 686 S.W.2d 744 (Tex.App.–2nd Dist.1985). In speaking for that Court, Justice Ashworth pointed out that where the accused has been arrested by the police and placed in their custody for allegedly committing the offense of driving while intoxicated, even though formal criminal charges had not then been filed, that this is a critical stage of the process, and thus such an individual is entitled to have the assistance of counsel at that stage of the process.

In determining whether the stage prior to the blood-alcohol test is critical, we

---

**4.** Of course, there are a few individuals, such as Professor Inbau of Northwestern University, who teach and preach that an attorney's presence at the stationhouse can cause undue confusion and interference with good police work, and that no accused person in that situation should be permitted to have the assistance of counsel at that stage of the criminal process.

See, for example, Inbau, "Over–Reaction—The Mischief of Miranda v. Arizona," *The Prosecutor*, Vol. 18, No. 4. I find that Professor Inbau's views, and those who subscribe to his views, are as impressive as the number of wins that Northwestern University's football team has had since Otto Graham played quarterback at that school almost 50 years ago.

briefly review the situation. The accused has been taken into custody; he has been informed that he has the right to remain silent and has the right to consult an attorney, and he has been informed that his operator's license can be suspended if he refuses to give a speciment of his breath or blood. He is placed on the horns of a dilemma—he has been told he may remain silent and consult an attorney, and in the same breath is required to answer a question which has significant results. If he refuses, he knows his license may be suspended and the fact that he refused can be used as evidence against him in his trial. If he consents and the test reveals an alcohol content in his blood of 0.10% or more, he is automatically guilty of driving while intoxicated. Even if the test results show less than 0.10% concentration of alcohol, there is no guarantee that he will not be tried for the offense of public intoxication, or driving while intoxicated by reason of the fact that his mental or physical faculties were impaired. It stretches reason to say this is not a critical stage of the pretrial proceeding ... We therefore find ... that a person has a right to counsel prior to making a decision regarding whether to submit to the chemical test referred to in arts. 6701L–1 and 5. (753–754).[5] (Footnote added.)

In the dissenting opinion that I filed in this Court's first *McCambridge v. State*, 712 S.W.2d 499, 508 (Tex.Cr.App.1986), cause, I pointed out that a clear reading of the Fort Worth Court of Appeals opinion of *Forte, supra*, easily showed why its decision was not predicated upon either Federal or State constitutional grounds but instead was based upon State statutory grounds. The majority opinion of this Court, however, erroneously in my view, construed the court of appeals opinion to mean that it was doing nothing more than refusing to adhere to what the Supreme Court of the

United States had already stated and held in this area of the criminal law, and remanded the cause to that court, "for consideration of whether appellant was denied the right to counsel under Texas law." 707 S.W.2d at 96.

In this Court's majority opinion of *Forte v. State*, 759 S.W.2d 128 (Tex.Cr.App.1988), the following was stated: "Thus, in Texas by operating a motor vehicle upon the public highway consent is legally implied. It would defy both logic and common sense, then to authorize a driver to invoke that implied consent, and ultimately suspend the driver's license for exercising the right of refusal. In actuality, *since the suspect has no legal choice [and thus no independent decision to make]* whether to take the breathalyzer, counsel would then not be protecting any known right or safeguard by advising a suspect to refuse the test. Counsel's advice as to whether to consent to the breathalyzer under the circumstances of his client's case is a matter of strategic maneuvering, and the taking of calculated risks in the hope of lessening the chances of conviction or the dismissing of criminal charges, and does not come within the penumbra of Art. I, Sec. 10, to mandate the invocation of the right to counsel. (Footnote deleted.) *Since an accused has no legal right to withdraw his implicit consent to take the breath test (as distinguished from physically refusing to take the test) 'counsel's absence [or lack of consultation] ... [does not] derogate from the accused's right to a fair trial.'* United States v. Wade, [388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)] [388 U.S.], at 226 [87 S.Ct. at 1932]." (My emphasis.) Of course, such rationale comports with what Professor Inbau advocates. See *ante.*

Therefore, given what this Court stated and held in *Forte, supra*, what the Fort Worth Court of Appeals stated and held in

---

5. Also see the well reasoned dissenting opinion that Judge Knoll of Louisiana's Third Court of Appeals filed in *State v. Broussard*, 517 So.2d 1000, 1004 (La.App. 3 Cir.1987). Also see *Arizona v. Juarez, et al.*, 775 P.2d 1140 (Ariz.1989). Today, a majority of this Court holds that "a

critical stage in the criminal process does not occur until formal charges are brought against a suspect." (Page 76.) This, of course, is probably one of the most revolutionary statements ever uttered by any member of this Court, much less a collective majority of this Court.

its second opinion in *Forte*, supra, and what the First Court of Appeals stated and held in its opinion on remand in this cause, what's new in this cause that requires a different song to be written, much less sung, by a majority of this Court?

It appears to me, at least implicitly, that in this cause all that this Court is doing is attempting to mimic what the Supreme Court has already stated and held on the subject, see *South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), and *Pennsylvania v. Bruder*, supra, in its interpretation of the federal constitution, and apply same as a matter of Texas Constitutional law to this cause.

I observe that the majority opinion also attempts to apply the due process of law rationale that was created in *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), and its progeny, to the pretrial and pre-formal charge stage of a driving while intoxicated offense case. However, either expressly or implicitly, the Supreme Court of the United States has already killed and buried that old dog. Thus, until it experiences reincarnation, that old dog can't hunt anymore.

History teaches us that until the "Warren Court" became entrenched, except in those cases where the facts of the case shocked the consciences of at least a majority of the members of the Supreme Court, that Court would not become involved in state criminal cases.

It was actually not until 1963, when *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), was decided, that federal district court judges and the federal circuit courts of appeals began to concern themselves with the preservation of individual criminal legal rights under the Federal Constitution.

However, ever since the "Burger Court" and the present "Rehnquist Court" became entrenched, there is no longer any desire by a majority of the Supreme Court to concern themselves with the preservation of or extending any individual criminal legal rights that might exist under the Federal Constitution. See Miller, "The Great

Writ, Habeas Corpus", Vol. 22, No. 2, *The Prosecutor*. In fact, notwithstanding the fact that "The number of [habeas] petitions is at about the same level as 20 years ago", so says Professor Ira Robbins, an expert in post-conviction remedies at American University Washington College of Law, Chief Justice Rehnquist recently appointed retired Justice Powell to head up the "Special Committee on Habeas Corpus Review of Capital Sentences", a committee whose members some say are extremely conservative and hostile to habeas review of death penalty convictions and sentences in federal courts of state convictions. See "Use of Habeas Writ Study Imperiled by Study", *The National Law Journal*, Vol. 11, No. 12, November 28, 1988.

The distinction between the due process of law right to have the assistance of counsel *at trial*, or *in the courtroom*, and the due process of law right to have the assistance of counsel during the *pre-trial* stage of the trial is often overlooked, which failure I find causes the majority opinion to be extremely flawed in its discussion on the subject of a defendant's due process of law right to have the assistance of counsel prior to the initiation of formal adversary proceedings. At least since the early 1930's, in capital murder cases, a majority of the Supreme Court was careful to see that an indigent accused's "courtroom" right to have the assistance of counsel under the Fourteenth Amendment's Due Process of Law Clause was fully protected. However, until the 1960's, when it came to matters that pertained to the pretrial stage of the criminal process, or in the gathering of evidence stage of the process, unless the facts "shocked the conscience" of the Court, or offended "those canons of decency and fairness which express the notions of justice of English-speaking peoples", see, for example, *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), the Supreme Court would not get involved with a state criminal conviction. Thus, unless the facts of a state criminal case were obtained in violation of the above, any incriminating evidence that was obtained prior to the courtroom stage of the process became admissible at the defen-

dant's trial. See, for example, *Wolf v. Colorado*, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949). It was not until the Supreme Court decided *Powell v. Alabama*, supra, that the indigent accused *in a capital murder trial* was given the right to have the assistance of counsel after formal criminal charges were filed. In its non-unanimous opinion of *Powell*, supra, the Court held: "[W]here the defendant was unable to employ counsel, and is incapable adequately of making his own defense because of ignorance, feeblemindedness, illiteracy, or the like, it is the duty of the court, whether requested or not, to assign counsel for him as a necessary requisite of due process of law." The Court stressed in its majority opinion of *Powell*, supra, that that was "[a]ll that is necessary now to decide." Thus, anything stated in *Powell*, supra, that might relate to the pre-formal charge stage of the criminal process is pure dicta. However, there can be no question that the facts set out in *Powell v. Alabama*, supra, "shocked the consciences" of all but one member of the Supreme Court. Mister Justice Butler dissented to the Supreme Court "trespassing" on "a field hitherto occupied exclusively by the several states." Also see *Hernandez v. State*, 726 S.W.2d 53, 64 (Tex.Cr.App.1986) (Teague, J., concurring and dissenting opinion).

When it came to whether an indigent accused was entitled to have the assistance of counsel in a non-capital case, the Supreme Court, however, ruled that under the due process clause "each case depends on its own facts." *Uveges v. Pennsylvania*, 335 U.S. 437, 69 S.Ct. 184, 93 L.Ed. 127 (1948). In *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the Court ruled that the Sixth Amendment right to counsel *at trial*, or *in the courtroom*, was made applicable to the States through the Due Process Clause of the Fourteenth Amendment of the Federal Constitution. Interestingly, "Since at least 1948, in capital cases, and since at least 1957, in non-capital cases, Texas has required that, when requested, indigents must be furnished counsel [for their trials]. See 28 *Tex.L.Rev.* 236 (1949); Morrison, 'Requiring the Appointment of Counsel at

Trial and on Appeal,' 28 *Tex.Bar J.* 23 (1965); Onion, 'The Right to Counsel,' 28 *Tex.Bar J.* 357 (1965)." *Hernandez*, supra, at 72.

The right to have the assistance of counsel was extended to persons accused of misdemeanor crimes, provided that the punishment that could be assessed included jail time. See *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). Also see *Scott v. Illinois*, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979).

My research reveals that the issue of whether an accused person has the right to have the assistance of counsel under the Due Process Clause of the Fourteenth Amendment during pretrial was first decided by the Supreme Court *in 1958* in its unfavorable to the defendant decision of *Crooker v. California*, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448 (1958). At that time, the Supreme Court was still using its "shocks the conscience" test.

In *Crooker*, supra, the Supreme Court was confronted with the situation where the defendant, prior to giving the police a confession, had requested the assistance of a specific attorney who he thought might represent him. The police told him that he could contact this attorney after the investigation was concluded, which meant after they had obtained a confession from him. Subsequently, the defendant gave a detailed confession to the murder which the police suspected him of committing. When the District Attorney sought to have the defendant orally repeat his written confession, the defendant again requested that the attorney who he thought might represent him be called on the telephone, which was done by the District Attorney, after which the defendant and his attorney communicated by telephone, which conversation, unknown to them, was tape recorded by the District Attorney. The attorney apparently told the defendant not to speak further to the District Attorney, and the defendant followed his advice, after which the defendant was returned to his jail cell. He later met with the attorney, and the attorney thereafter represented him at his trial. In rejecting the defendant's conten-

tion that the prosecutor's use of his confession at his trial violated due process of law, because it was obtained after denial of the defendant's request to contact his attorney before he gave the confession, the Supreme Court first found that the confession was anything other than voluntary, and then ruled that "state refusal of a request to engage counsel violates due process only if the accused is deprived of counsel at trial on the merits, *Chandler v. Fretag*, [348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954)], and if he is deprived of counsel for any part of the pretrial proceedings, he must be so prejudiced thereby as to infect his subsequent trial with an absence of 'that fundamental fairness essential to the very concept of justice.' *Lisenba v. People of State of California*, 1941, 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166. Cf. *Moore v. State of Michigan*, 1957, 355 U.S. 155, 160, 78 S.Ct. 191, 194, 2 L.Ed.2d 167. The latter determination necessarily depends upon all the circumstances of the case." 78 S.Ct. at 1292. In footnote 6 of its opinion, the Court pointed out that "What due process requires in one situation may not be required in another, and this, of course, because the least change of circumstances may provide or eliminate fundamental fairness. The ruling here that due process does not always require immediate honoring of a request to obtain one's own counsel in the hours after arrest, hardly means that the same concept of fundamental fairness does not require state appointment of counsel before an accused is put to trial, convicted and sentenced to death." 78 S.Ct. at 1292–93.

The Supreme Court also concluded in *Crooker*, supra, that "the sum total of the circumstances here during the time petitioner was without counsel is a voluntary confession by a college-educated man with law school training who knew of his right to remain silent. Such facts ... do not approach the prejudicial impact in *House v. Mayo*, [324 U.S. 42, 65 S.Ct. 517, 89 L.Ed. 739 (1945)], and do not show petitioner to have been so 'taken advantage of,' *Townsend v. Burke*, 1948, 334 U.S. 736, 739, 68 S.Ct. 1252, 1254, 92 L.Ed. 1690, as to violate due process of law." 78 S.Ct. at 1292.

The Court refused to enact a per se rule concerning a violation of the right to counsel, as urged by the defendant, and ruled that "Due process, a concept 'less rigid and more fluid than those envisaged in other specific and particular provisions of the Bill of Rights,' *Betts v. Brady*, 1942, 316 U.S. 455, 462, 62 S.Ct. 1252, 1256, 86 L.Ed. 1595, demands no such rule. (Footnote deleted)." Also see *Cicenia v. La Gay*, 357 U.S. 504, 78 S.Ct. 1297, 2 L.Ed.2d 1523 (1958). Therefore, although the facts of *Crooker*, supra, might have shocked some consciences, they were insufficient to shock the consciences of a majority of the Court.

Soon thereafter, the "Warren Court" took over, but only for a brief period of time. The "Warren Court" was succeeded by the "Burger Court" which was succeeded by the present "Rehnquist Court". In the criminal law field, the latter courts have gone from being arch-conservative to extremely arch-conservative. I believe that the succeeding "Burger Court" or "Rehnquist Court" majority opinions make it clear that anything stated in any of the "Warren Court" majority opinions, that gave the accused individual any legal rights, must be read strictly in the context of the facts of that particular case. In other words, rather than continuing to build on the law as the "Warren Court" did, the "Burger Court" and the "Rehnquist Court" have opted to undo or redo anything that the "Warren Court" majority opinions might have stated, if same was favorable to a criminal defendant. There are, of course, aberrational opinions that have been handed down by those courts, which appear favorable to the defendant, but I believe that it will only be a matter of time before those opinions are either expressly or implicitly overruled, once the majority realizes what they did.

To demonstrate my point that the "Warren Court" was constantly engaging in the "building of the law" principle, i.e., after it decided an issue in one case, it would later take the opportunity to extend its holding in that case in another case, I will discuss some of that Court's more famous "right to counsel" cases.

In *Hamilton v. Alabama*, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961), the Supreme Court ruled that the failure of Alabama to provide the defendant in that cause with counsel before arraignment on a capital charge, which under Alabama law was a "critical stage" in criminal proceeding, vitiated the defendant's conviction for capital murder even though the defendant did not demonstrate any disadvantage flowing from the lack of court appointed counsel at arraignment. The Court in *Hamilton*, supra, quoted the following from *Powell v. Alabama*, supra: "[An accused] in a capital case 'requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence.'" Of course, these are beautiful sounding words. But observe that *Powell*, supra, dealt with the right of an indigent defendant to have the assistance of counsel at his trial if he was charged with committing capital murder, whereas *Hamilton*, supra, dealt strictly with the arraignment stage of the criminal process.

In *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), the Court held that the defendant in that cause was entitled to have the assistance of counsel at a preliminary hearing, because such was found to be a "critical stage" of the process, and the above quote from *Powell*, supra, was repeated.

*Coleman*, supra, actually might be the high water mark for the Supreme Court when it came to granting a defendant the right to have the assistance of counsel outside of the usual courtroom context. By 1964, the "Warren Court train" was fast running out of steam, and by the dissenting opinion that he filed in *Coleman*, supra, Chief Justice Burger made it clear to all that he was then aching, not just to be the chief engineer of the train to which he had been appointed to run, but also aching to assign those members who were then in charge of the train to the "dissenting" compartment of the train.

Therefore, when one reads in the majority opinion the quotes from such cases as *Powell*, supra, *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), and *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), he should keep in mind that those cases must be strictly read and limited to their own peculiar factual surrounding. Of course, the same is true when one reads any of this Court's majority or unanimous opinions.

Whether an individual who has been lawfully arrested for driving while intoxicated, and formal charges have not been filed, has a Texas Constitutional right to have the assistance of counsel in the field or at the station house is now totally dependent upon how this Court interprets the provisions of Art. I, § 10, of the Texas Constitution, and in particular how it interprets the term or phrase "criminal prosecutions." I do not find in either this Court's recent *Forte*, supra, opinion or in today's majority opinion any discussion about that phrase.

There appears to be two viewpoints on how the term or phrase "criminal prosecution" should be interpreted.

Justice Douglas, in the concurring opinion that he filed in *Coleman v. Alabama*, supra, correctly pointed out the following: "A 'criminal prosecution' certainly does not start only when the trial starts. If the commencement of the trial were the start of the 'criminal prosecution' in the constitutional sense, then indigents would likely go to trial without effective representation by counsel." 26 L.Ed.2d at 400.

The other viewpoint is that such term or phrase is limited to the courtroom, which appears to be the viewpoint that the "Rehnquist Court" and a majority of the members of this Court subscribe to, if all that the police want is for the defendant to perform on video and submit a blood or breath bodily substance. Of course, by interpreting the term or phrase in that manner, where formal criminal charges have not been filed, this eliminates the need to discuss whether such a defendant has the right to have the assistance of counsel at that stage of the process.

My vote is to adopt Justice Douglas' viewpoint, that the term or phrase "criminal prosecution" is not limited just to the courtroom, and at least is applicable to the station house stage of the criminal process. Shouldn't the majority opinion expressly tell us why the term or phrase "criminal prosecution" is only applicable to the post-formal charge stage of the criminal process, and why in a driving while intoxicated situation it should not be applicable to the field or the station house stage of the criminal process, when it comes to an accused's right to have the assistance of counsel?

A majority of this Court has already held that *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), is not applicable to a driving while intoxicated case because it is a Fifth Amendment-interrogation or constitutional privilege against compulsory self-incrimination case. Thus, it is limited to the custodial interrogation situation, which does not, in the eyes and minds of the majority of the "Rehnquist Court" or a majority of this Court, cover the "breathalyzer stage" of the proceedings, because they believe that requesting the defendant to submit to a blood or breath test does not constitute "custodial interrogation", nor do they believe that it constitutes the giving of testimony by the defendant, notwithstanding the fact that, if the defendant refuses to take the offered test, his "testimonial" refusal is admissible evidence against him at his trial. See *McCambridge v. State,* 712 S.W.2d 499, 506 (Tex.Cr.App.1986) (Held, "Not only does the breath testing decision not involve custodial interrogation, it also does not involve the privilege against self-incrimination. A rule that focuses on preventing collection of a breath sample, merely because a defendant has been informed of his right to have counsel present if he is interrogated, would severely restrict police officers in the pursuit of lawfully collecting evidence of intoxication and, more significantly, do nothing to further protect the privilege against self-incrimination. Therefore, we find that appellant, under the instant facts, has no remedy under *Miranda v. Arizona,* supra, or *Edwards v. Arizona,* supra.[18] (footnote in original.)

18. In finding that appellant has no remedy under *Miranda v. Arizona,* supra, or *Edwards v. Arizona,* supra, we do not imply that a remedy will never be available to a suspect *who is confused* when faced with *Miranda* warnings and a breath testing decision without the benefit of requested counsel. [Emphasis supplied.] We are simply limiting our decision in the instant case to the issues and remedy requested by appellant in his petition for review. The legislature is free to enlarge upon the statutory warnings required at present, thus requiring a police officer to inform a suspect that *Miranda* warnings do not apply to the breath testing decision. See art. 6701L–5, § 2(b), supra. However, we believe it would be inappropriate for this Court to make such an expansion of statutory warnings absent legislative authority." Unfortunately the majority opinion did not clarify exactly what constitutes or can constitute "confusion" by the accused who is in the "breathalyzer stage" of a driving while intoxicated case process.

In this Court's last *Forte,* supra, opinion, the following was stated:

Thus, in Texas by operating a motor vehicle upon the public highway consent is legally implied. It would defy both logic and common sense to assume that the Legislature of this State would imply consent, then authorize a driver to revoke that implied consent, and ultimately suspend the driver's license for exercising the right of refusal. In actuality, *since the suspect has no legal choice whether to take the breathalyzer,* counsel would then not be protecting any known right or safeguard by advising a suspect to refuse the test. Counsel's advice as to whether to consent to the breathalyzer under the circumstances of his client's case is a matter of strategic maneuvering, and the taking of calculated risks in the hope of lessening the chances of conviction or the dismissing of criminal charges, and does not come within the penumbra of Art. I, Sec. 10, to mandate the invocation of the right to counsel. (Footnote deleted.) *Since an accused has no legal right to withdraw his implicit consent to take the breath test (as distinguished from physically refusing to take the test) 'counsel's absence [or lack of consultation] ... [does not] derogate from the accused's right*

*to a fair trial.'* *United States v. Wade,* supra [388 U.S. 218] at 226, 87 S.Ct. [1926] at 1932 [18 L.Ed.2d 1149 (1967)]. Therefore, the time at which an accused is faced with the decision of whether to submit to a breath test is not a 'critical stage' of the criminal process which necessitates either the prior consultation with or presence of counsel under the right to counsel provision of Art. I, § 10 of the Texas Constitution. Accordingly, we hold, as we did when we considered the matter under the Sixth Amendment, the '[a]ppellant's right to counsel did not attach until the time the complaint was filed.' *Forte v. State,* 707 S.W.2d 89 (Tex.Cr.App.1986). (Emphasis supplied.)

I have concluded that, given the above, perhaps this Court has succeeded where Jack Cade failed, see Shakespeare, *Henry the Sixth,* Pt. 2, Act 4, scene 2, when Dick the Butcher stated to Jack Cade, "The first thing we do, let's kill all the lawyers", and Jack responded: "Nay, that I mean to do."

I respectfully dissent to the majority opinion's holding that under the facts of this cause "appellant's right to counsel did not attach until the time the complaint was filed." I would adopt and apply, as a matter of state constitutional law, what Justice Douglas stated in the dissenting opinion that he filed in *Crooker,* supra.